Kuntrell O'Bryan JACKSON *v.* STATE of Arkansas

CR 04-45                                                      194 S.W.3d 757

Supreme Court of Arkansas
Opinion delivered October 7, 2004

*Charles E. Ellis*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

BETTY C. DICKEY, Chief Justice. Kuntrell Jackson appeals his judgments of conviction for capital felony murder and aggravated robbery and his sentence of life without parole. He contends that the trial court erred in: (1) denying his motion to suppress; (2) denying his motion for a directed verdict; and (3) instructing the jury on the affirmative defense to first-degree murder. Because this is a criminal appeal in which the death penalty or life imprisonment has been imposed, jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no merit to Jackson's allegations of error and affirm the convictions.

## Facts

On the evening of November 18, 1999, the appellant, Kuntrell Jackson was walking with Derrick Shields and Travis Booker through the Chickasaw Courts housing project in Blytheville and began discussing the idea of robbing the Movie Magic video store. On the way to Movie Magic, the appellant became aware of the fact that Shields was carrying a sawed-off .410 gauge shotgun in his coat sleeve. When they arrived at the store Shields and Booker went in, while the appellant elected to remain outside by the door. Shields pointed the shot gun at the video clerk, Laurie Troup, and demanded that she "give up the money." Troup told Shields that she didn't have any money. A few moments later, Jackson went inside. Shields demanded that Troup give up the money five or six more times, and each time she refused. After Troup mentioned something about calling the police, Shields shot her in the face. The three boys then fled to Jackson's house without taking any money. Later, Jackson jokingly told his classmates he was responsible for the Movie Magic incident. At trial, he denied any culpability, and admitted he had lied in his earlier statement to the police that the three of them went their separate ways after the shooting.

On March 7, 2000, Detective Ross Thompson of the Blytheville Police Department spoke with Jackson, who was in custody on an unrelated charge. Thompson advised the appellant of his *Miranda* rights and questioned him about the Movie Magic incident, because of some statements that Detective Thompson had previously obtained. In his statement, which was made without any coercion or promises to him, the appellant denied the allegations that he had anything to do with the shooting at Movie Magic. On March 28, 2001, after securing an arrest warrant in connection with the murder at the video store, both Detective

Thompson and Detective Gary Buys of the Blytheville Police Department questioned Jackson again at the juvenile detention facility in Colt, Arkansas, where the appellant was being held on yet another unrelated charge. Once again, Thompson advised Jackson of his rights, offering no promises to him, and the appellant gave another uncoerced statement. After verbally explaining what happened, Jackson gave a written statement which said, "Derrick shot the lady. That's all I'm saying." The appellant refused to say anything else until he could speak with his mother. He was then taken back to Blytheville, where he later asked to speak with Detective Buys. After again being given the same *Miranda* rights as an adult, Jackson gave an uncoerced and tape-recorded statement about the robbery and shooting at the video store. Again, the detectives neither coerced nor made promises to him.

In a pre-trial suppression hearing, Jackson requested that the trial court suppress his prior statements, but his *motion in limine* was denied. At the conclusion of the State's case- in-chief, and at the conclusion of the trial, he moved for a directed verdict. Both motions were denied. Jackson was convicted of both capital murder and aggravated robbery. He was sentenced to life in prison on the capital murder conviction, but he was not sentenced on the robbery conviction. Jackson brings three points on appeal: (1) whether the trial court erred in denying his motion to suppress; (2) whether the trial court erred in denying his motions for a directed verdict; and, (3) whether the trial court erred in instructing the jury concerning an affirmative defense to first-degree murder.

### Directed Verdict

Jackson asserts that the trial court erred in denying his motions for a directed verdict because he did not participate in the commission of either the robbery or the shooting to a degree which would support a finding of guilt. We disagree. Appellant actually raises this issue as his second point on appeal, because of double-jeopardy concerns, however, we will address his sufficiency-of-the-evidence argument first. *See Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). When a defendant makes a challenge to the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the State. *Engram v. State*, 341 Ark. 196, 15 S.W.3d 678 (2000); *Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999); *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998); *Bailey v. State*, 334 Ark. 43, 972 S.W.2d 239 (1998). It is well-settled that a motion for a directed verdict is a challenge to

the sufficiency of the evidence. *Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (2002); *Smith v. State*, 346 Ark. 48, 55 S.W.2d 251 (2001)(citing *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995)). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Smith, supra.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Smith, supra.* Only evidence supporting the verdict will be considered; when a challenge to sufficiency of the evidence is reviewed, the conviction will be affirmed if there is substantial evidence to support it. *Smith, supra.*

In order to convict the appellant of capital murder, the State had to prove that Jackson attempted to commit or committed an aggravated robbery and, in the course of that offense, he, or an accomplice, caused Ms. Troup's death under circumstance manifesting an extreme indifference to the value of human life. *See*, Ark. Code. Ann. § 5-10-101(a)(1)(Repl. 1997). However, section (b) of the capital murder statute provides:

> (b) It is an affirmative defense to any prosecution under subdivision (a)(1) of this section for an offense in which the defendant was not the only participant that the defendant did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid in its commission.

Ark. Code. Ann. § 5-10-101(b) (Repl. 1997). Jackson avers he carried his burden of proof on the affirmative defense capital murder in that he was not the only participant in the crime, and he did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid in its commission. It is undisputed that Jackson was not the only participant, and there is no question that Shields was the one who shot Ms. Troup. However, there is some contention as to whether Jackson aided, solicited, or encouraged the robbery or murder.

Specifically, there is a question of fact as to whether Jackson said "We ain't playin' " or "I thought you all was playin' " upon entering the store. An earlier statement given by Booker reported that the appellant said, "We ain't playin'." However, at trial, Booker recanted, and both he and the appellant testified that Jackson said, "I thought you all was playin'." This court has held that it is within the province of the jury to accept or reject testimony as it sees fit. *Riggins v. State*, 317 Ark. 636, 882 S.W.2d

664 (1994). Moreover, this court has held that we do not attempt to weigh the evidence or pass on the credibility of witnesses. That duty is left to the trier of fact. *Harris v. State*, 331 Ark. 353, 961 S.W.2d 737 (1998). Based on the facts of this case, the jury was well within its right to believe Booker's earlier statement to the police rather than accept his testimony at trial, and thus find that Jackson did, in fact, in some way solicit, command, induce, procure, counsel, or aid in the commission of the crime *sub judice*. Accordingly, we hold that the evidence presented at trial is sufficient to support Jackson's conviction, and we affirm the trial court on this point.

### Motion to Suppress

■ Next, Jackson contends, because he was a juvenile at the time he was questioned, the trial court erred in denying his motion to suppress statements given to the police. He contends the officers did not comply with the protections afforded him by Ark. Code Ann. § 9-27-317, in that they failed to advise him of his *Miranda* rights in his own language, and they failed to inform him of his right to have a parent present during questioning. In cases involving a trial court's ruling on a motion to suppress, we make an independent determination based on the totality of the circumstances. *Grillot, supra.* Because Ark. Code Ann. § 9-27-317(i)(2)(A) and (B) had not yet been enacted at the time he was questioned on March 7, 2000, or March 28, 2001, Jackson's reliance upon § 9-27-317 is misplaced. Although the statute in question was enacted in April 2001, we have a duty to construe statutes as having only a prospective operation unless the purpose and intention of the legislature to give them a retroactive effect are expressly declared or necessarily implied by the language used. *Littles v. Flemings*, 333 Ark. 476, 970 S.W.2d 259 (1998). Since the statute in question contained neither an emergency clause nor any language indicating that it was to be applied retroactively, we hold that it can only be applied prospectively.

■■ In addition, this court has recently held that § 9-27-317(i) does not apply where a juvenile has been charged as an adult. *Shields v. State*, No. CR 03-866, slip op. (May 6, 2004); *Jenkins v. State*, 348 Ark. 686, 75 S.W.3d 180 (2002); *Ray v. State*, 344 Ark. 136, 40 S.W.3d 243 (2001). Because, Jackson was charged as an adult, he cannot avail himself of the protections of § 9-27-317 (Repl. 2002). Nonetheless, Jackson argues that we

should overturn controlling precedent because under the current state of the law, it is the police, rather than the prosecutors who decide whether or not a juvenile is to be tried as an adult. Jackson cites to no authority which would allow us to overturn our precedent, and it is well-settled that we will not consider an argument that presents neither citation to authority nor convincing argument. *Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2002); *see also Hollis v. State*, 346 Ark. 175, 55 S.W.3d 756 (2001). Accordingly, we decline his invitation to overturn our prior case law and affirm on this point.

*Jury Instruction*

For his final point on appeal, Jackson asserts that, by instructing the jury on the affirmative defense to first-degree murder, the trial court confused the issue and presented an insurmountable and unnecessary burden. The affirmative defense to murder in the first degree is as follows:

> (b) It is an affirmative defense to any prosecution under subdivision (a)(1) of this section for an offense in which the defendant was not the only participant that the defendant:
>
> (1) Did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid its commission; and
>
> (2) Was not armed with a deadly weapon; and
>
> (3) Reasonably believed that no other participant was armed with a deadly weapon; and
>
> (4) Reasonably believed that no other participant intended to engage in conduct which could result in death or serious physical injury.

Ark. Code Ann. § 5-10-102(b) (Repl. 1997). We have held that a party is entitled to an instruction on a defense if there is sufficient evidence to raise a question of fact or if there is any supporting evidence for the instruction. *Kemp v. State*, 348 Ark. 750, 74 S.W.3d 224 (2002); *Yocum v. State*, 325 Ark. 180, 925 S.W.2d 385 (1996). Jackson insists, given the fact he knew Shields was armed, there was no way that he could have met his burden on the third element of the affirmative defense. And, by giving the instruction, the trial court made it impossible for the jury to consider the issue of guilt or innocence on the charge of murder in the first degree.

■ The State contends that, even if the trial court erred in giving the instruction, any error was harmless. We agree. The trial court instructed the jury on capital murder and then instructed the jury on murder in the first degree and its affirmative defense. The court instructed the jury that, unless it had a reasonable doubt of the appellant's guilt on the charge of capital murder, it was not to consider the charge of murder in the first degree; and it was not to consider the affirmative defense to murder in the first degree unless and until it determined that he had committed that offense. Because the jury found Jackson guilty of capital murder, it could not consider the charge of murder in the first degree nor its affirmative defense. Accordingly, we hold that any error the trial court might have committed in instructing the jury on the affirmative defense murder in the first degree was harmless, and we also affirm the trial court on this point.

*Rule 4-3(h) Review*

The record has been examined in accordance with Ark. Sup. Ct. R. 4-3(h), and the objections have all been abstracted and certified by the State. There are no other rulings adverse to the appellant which constituted prejudicial error.

Affirmed.