2011 Ark. 49

**Kuntrell JACKSON, Appellant**

v.

**Larry NORRIS, Director, Arkansas Department of Correction, Appellee.**

No. 09–145.

Supreme Court of Arkansas.

Feb. 9, 2011.

J. Blake Hendrix and Bryan A. Stevenson, Brandon J. Buskey, and Alicia A. D'Addario, Equal Justice Initiative of Alabama, for appellant.

Dustin McDaniel, Att'y Gen., by: Kent G. Holt, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Justice.

This is an appeal from a denial of a petition for a writ of habeas corpus. Appellant Kuntrell Jackson was convicted of capital murder and aggravated robbery by a jury in Mississippi County Circuit Court on July 19, 2003. After the jury rendered a verdict, the trial court sentenced Jackson to life imprisonment without the possibility of parole. We affirmed. *Jackson v. State*, 359 Ark. 87, 194 S.W.3d 757 (2004). Jackson did not file a petition for postconviction relief.

On January 8, 2008, Jackson filed a petition seeking a writ of habeas corpus in the Jefferson County Circuit Court. The State moved to dismiss the petition. After a hearing, the State's motion to dismiss was granted. In its order dismissing appellant's petition for writ of habeas corpus, the circuit court found that Jackson failed to demonstrate that his commitment was facially invalid or that the Mississippi County Circuit Court lacked jurisdiction to sentence him to life imprisonment without the possibility of parole. This appeal followed.

Jackson's argument on appeal is that the circuit court erred in denying his petition because it lacked lawful authority to impose the sentence of life imprisonment without the possibility of parole for an offense committed when Jackson was fourteen years old. Jackson specifically argues that the Eighth and Fourteenth Amendments to the United States Constitution and article 2, sections 8 and 9 of the Arkansas Constitution prohibit the mandatory sentencing of children fourteen years of age and younger to life without the possibility of parole. We find no error and affirm.

■ A writ of habeas corpus will only lie where the commitment is invalid on its face or where the court authorizing the commitment lacked jurisdiction. *Flowers v. Norris,* 347 Ark. 760, 68 S.W.3d 289 (2002); *McKinnon v. Norris,* 366 Ark. 404, 231 S.W.3d 725 (2006) (per curiam). The writ may be granted where a petitioner pleads either facial invalidity or lack of jurisdiction and makes a "showing, by affidavit or other evidence, [of] probable cause to believe" he is so detained. *See* Ark. Code Ann. § 16–112–103 (Repl.2006). This court has recognized that detention for an illegal period of time is precisely what a writ of habeas corpus is designed to correct. *See Bangs v. State,* 310 Ark. 235, 835 S.W.2d 294 (1992); *see also Friend v. Norris,* 364 Ark. 315, 219 S.W.3d 123 (2005) (per curiam); *Meny v. Norris,* 340 Ark. 418, 13 S.W.3d 143 (2000) (per curiam).

Jackson argues that his sentence is unusual, excessive, and in violation of his rights under the Eighth and Fourteenth Amendments of the U.S. Constitution, as well as article 2, sections 8 and 9 of the Arkansas Constitution. Jackson correctly notes that a sentence of life imprisonment without the possibility of parole is the penultimate punishment under Arkansas law, exceeded only by the death penalty. For capital offenses, the legislature has proscribed only these two punishments. *See* Ark.Code Ann. § 5–4–615 (Repl.1997).

■ In Arkansas, sentencing is entirely a matter of statute, and this court defers to the legislature in all matters related to sentencing. *See* Ark.Code Ann. § 5–4–104(a) (Repl.1997); *State v. Britt,* 368 Ark. 273, 244 S.W.3d 665 (2006). Where the law does not authorize the particular sentence pronounced by a trial court, the sentence is unauthorized and illegal, and the case must be reversed and remanded; however, if a sentence is within the limits set by the legislature, it is legal. *State v. Joslin,* 364 Ark. 545, 222 S.W.3d 168 (2006); *Porter v. State,* 281 Ark. 277, 663 S.W.2d 723 (1984). We have specifically rejected the claim that a sentence of life imprisonment without parole violates the Eighth Amendment of the United States Constitution's prohibition against cruel or unusual punishment and stated that such a sentence is not unconstitutionally excessive when it is within the statutory bounds. *See Dyas v. State,* 260 Ark. 303, 539 S.W.2d 251 (1976).

■ This court has held that if the sentence fixed by the trial court is within legislative limits, we are not free to reduce it even though we might consider it to be unduly harsh, with three extremely narrow exceptions: (1) where the punishment resulted from passion or prejudice; (2) where it was a clear abuse of the jury's discretion; or (3) where it was so wholly disproportionate to the nature of the offense so as to shock the moral sense of the community. *Bunch v. State,* 344 Ark. 730, 43 S.W.3d 132 (2001). In *Bunch,* the court concluded that none of the three exceptions applied where the life-imprisonment punishment was mandated by the legislature and had been determined by the Supreme Court in *Harmelin v. Michigan,*

501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), as not violative of the Eighth Amendment. *Id.* Likewise, in the instant case, the sentencing court imposed a sentence of life imprisonment without parole, which is the sentence mandated by the legislature and one that we have determined to be constitutional when imposed within the statutory bounds.

Jackson also contends that dismissing his petition was erroneous because his sentence violated his federal constitutional rights pursuant to *Roper v. Simmons,* 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), as extended by the Supreme Court last year to cases with juvenile defendants involving a sentence of life imprisonment without the possibility of parole for nonhomicide crimes by *Graham v. Florida,* —— U.S. ——, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). In *Roper,* the Court held that execution of criminal defendants who are juveniles at the time the crime was committed is prohibited by the Eighth and Fourteenth Amendments, but clearly limited its holding to death-penalty cases involving juveniles: "Because the death penalty is the most severe punishment, the Eighth Amendment applies to it with special force." *Roper,* 543 U.S. at 568, 125 S.Ct. 1183. The Court expressly noted that although the execution of a juvenile is impermissible under the Eighth and Fourteenth Amendments, sentencing a juvenile to life imprisonment is not. *Id.* at 578–79, 125 S.Ct. 1183.

The Supreme Court's decision in *Graham* marked the first time the Court elected to extend a categorical ban on a particular type of punishment in a case that did not involve the death penalty. The Court in *Graham* employed a categorical analysis in reaching its conclusion that sentencing juveniles to life imprisonment without parole was excessive for nonhomicide offenses; however, the Court limited its ban to *nonhomicide* crimes. *Graham,* 130 S.Ct. at 2030. In reaching its conclusion, the Court specifically acknowledged this distinction between homicide and nonhomicide offenses, noting that "[t]here is a line 'between homicide and other serious violent offenses against the individual.'" *Id.* at 2027 (quoting *Kennedy v. Louisiana,* 554 U.S. 407, 438, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008)). The Court's holdings in *Roper* and *Graham* are very narrowly tailored to death-penalty cases involving a juvenile and life-imprisonment-without-parole cases for nonhomicide offenses involving a juvenile. We decline to extend the Court's bans to homicide cases involving a juvenile where the death penalty is not at issue.

Jackson has failed to allege or show that the original commitment was invalid on its face or that the original sentencing court lacked jurisdiction to enter the sentence. We hold that the circuit court's dismissal of the petition for writ of habeas corpus was not clearly erroneous.

Affirmed.

BROWN, J., concurs.

CORBIN, J., and DANIELSON, J., dissent.

ROBERT L. BROWN, Justice, concurring.

I concur in the decision. The majority is correct that the United States Supreme Court has held that sentencing juveniles to life in prison without parole for nonhomicidal offenses violates the Eighth Amendment prohibition in the United States Constitution against cruel and unusual punishment. *Graham v. Florida,* —— U.S. ——, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). The case before us, however, is a homicide case, which renders *Graham* inapposite. There is no case from the United States Supreme Court finding a

comparable violation of the Eighth Amendment for juveniles sentenced to life without parole for felony murder. That Court, of course, is the last word on the extent of Eighth Amendment protection. *Arkansas v. Sullivan*, 532 U.S. 769, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001) (per curiam).

The majority is also correct that sentencing for crimes upon conviction is entirely a matter of statute. Ark.Code Ann. § 5-4-104(a) (Repl.1997); *State v. Britt*, 368 Ark. 273, 244 S.W.3d 665 (2006). And once there is a conviction for capital murder for juveniles, life without parole for the offender becomes the mandatory sentence without any requirement for a pre-sentence hearing. Ark.Code Ann. § 5-4-602(3)(B)(ii) (Repl.2006). Hence, for Kuntrell Jackson, who was age fourteen at the time of the crime, his only remedy to avoid spending the rest of his life in prison after the conviction for capital murder is executive clemency from the governor.

I agree with Jackson's argument that this state needs a procedural mechanism for the jury to hear aggravating and mitigating circumstances before a juvenile is put away in prison for the rest of his life without the possibility of parole. Here, Jackson maintains he was not the trigger man in the homicide, and, indeed, he was convicted of a murder that occurred in the course of committing a felony—not deliberated or premeditated murder. Ark. Code Ann. § 5-10-101.

Hearing those factors at a sentencing-phase hearing may well have convinced the jury that life without parole was too severe and not appropriate in light of Jackson's age and circumstances. As it stands today, no sentencing hearing for a juvenile is available by statute once the death penalty is no longer an option and a conviction for capital murder has been had.

The General Assembly should examine this part of the criminal code to determine whether a sentencing hearing is appropriate before a mandatory sentence of life without parole is imposed on a person who was a juvenile at the time of the homicide and when the basis for the conviction is not premeditated murder but felony murder.

**PAUL E. DANIELSON, Justice, dissenting.**

I respectfully dissent from the majority's decision to affirm the denial of habeas relief in the instant case. I understand that the sentence fixed by the circuit court was within legislative limits; however, I disagree that this is not a case in which the particular facts allow us, if not require us, to provide relief.

Appellant Kuntrell Jackson was barely fourteen on the night of the incident that led to his arrest. He was walking with an older cousin and friend, Travis Booker and Derrick Shields, through the Chickasaw Courts housing project in Blytheville when the boys began discussing the idea of robbing the Movie Magic video store. On the way to Movie Magic, Jackson became aware of the fact that Shields was carrying a sawed-off .410 gauge shotgun in his coat sleeve. When they arrived at the store, Shields and Booker went in, but Jackson elected to remain outside by the door. Shields pointed the shotgun at the video clerk, Laurie Troup, and demanded that she "give up the money." Troup told Shields that she did not have any money. A few moments later, Jackson went inside. Shields demanded that Troup give up the money five or six more times, and each time she refused. After Troup mentioned something about calling the police, Shields shot her in the face. The three boys then fled to Jackson's house without taking any money.

Jackson was tried as an adult and convicted of capital murder when, pursuant to Ark.Code Ann. § 5–10–101(a)(1) (Repl. 1997), the State proved that Jackson attempted to commit or committed an aggravated robbery and, in the course of that offense, he, *or an accomplice,* caused Troup's death under circumstances manifesting an extreme indifference to the value of human life. The only sentence available for that conviction was death or life imprisonment without parole. *See* Ark. Code Ann. § 5–10–101(c)(1). Jackson was sentenced to life imprisonment without the possibility of parole.

As noted by the majority, our United States Supreme Court has held that not only does the execution of criminal defendants who are juveniles violate the Eighth and Fourteenth Amendments, sentencing a juvenile to life imprisonment without the possibility of parole is also an excessive punishment in violation of the Eighth and Fourteenth Amendments for a nonhomicide offense. *See Graham v. Florida,* —— U.S. ——, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). The facts in *Graham* are not terribly different from the facts in the instant case, except that the victim in *Graham* did not die from Graham's accomplice's physical attack:

> In July 2003, when Graham was age 16, he and three other school-age youths attempted to rob a barbeque restaurant in Jacksonville, Florida. One youth, who worked at the restaurant, left the back door unlocked just before closing time. Graham and another youth, wearing masks, entered through the unlocked door. Graham's masked accomplice twice struck the restaurant manager in the back of the head with a metal bar. When the manager started yelling at the assailant and Graham, the two youths ran out and escaped in a car driven by the third accomplice. The restaurant

> manager required stitches for his head injury. No money was taken.

*Id.* at 2018. Graham was charged as an adult for the armed burglary with assault or battery, a first-degree felony carrying a maximum penalty of life imprisonment without the possibility of parole; and attempted armed-robbery, a second-degree felony carrying a maximum penalty of fifteen years' imprisonment. *See Graham, supra.* Graham pleaded guilty to both charges under a plea agreement, which was accepted by the trial court. *See id.* He was then placed on probation after serving some jail time. *See id.* Graham was actually only sentenced to life imprisonment by the trial court after violating the terms of his probation by engaging in subsequent criminal activity. *See id.*

In analyzing whether this sentence was constitutional under the Eighth Amendment, the Supreme Court noted that:

> [W]hen compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability. The age of the offender and the nature of the crime each bear on the analysis.
>
> . . . .
>
> Here one cannot dispute that this defendant posed an immediate risk, for he had committed, we can assume, serious crimes early in his term of supervised release and despite his own assurances of reform. Graham deserved to be separated from society for some time in order to prevent what the trial court described as an "escalating pattern of criminal conduct," App. 394, but it does not follow that he would be a risk to society for the rest of his life. Even if the State's judgment that Graham was incorrigible were later corroborated by prison misbehavior or failure to mature, the sentence was still disproportionate because that judgment was made at the

outset. A life without parole sentence improperly denies the juvenile offender a chance to demonstrate growth and maturity. Incapacitation cannot override all other considerations, lest the Eighth Amendment's rule against disproportionate sentences be a nullity. *Id.* at 2027, 2029.

In the instant case, Jackson did not kill and any evidence of intent to kill was severely lacking. He never possessed the weapon, he was not the shooter, and his involvement in the robbery was limited. While he was convicted of capital murder, that conviction was only obtained by proving that he was an accomplice, and his accomplice took someone's life in the course of a felony, the aggravated robbery. Jackson's involvement in the robbery was no more, if not less than, Graham's involvement had been. I simply cannot ignore the fact that the analysis of the United States Supreme Court in *Graham* applies to the juvenile defendant in the instant case, regardless of the fact that, in the instant case, the prosecution was able to secure a capital-murder conviction through our felony-murder statute.

Also of great concern to me is that once Jackson was convicted, the circuit court had no discretion in sentencing. At the time of sentencing, the circuit court could not consider the defendant's age or any other mitigating circumstances—the circuit court only had jurisdiction to sentence Jackson to life imprisonment without the possibility of parole. "An offender's age is relevant to the Eighth Amendment, and criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed." *Graham*, 130 S.Ct. at 2031.

For these reasons, I believe that the sentence as applied in the instant case violates the prohibition against cruel and unusual punishment found in the Eighth and Fourteenth Amendments of the United States Constitution and article 2, section 9 of the Arkansas Constitution and, therefore, is illegal. Detention for an illegal period of time is precisely what a writ of habeas corpus is designed to correct. *See Taylor v. State*, 354 Ark. 450, 125 S.W.3d 174 (2003). Accordingly, I would reverse the denial of Jackson's petition for a writ of habeas corpus.

CORBIN, J., joins.