Justice Breyer,
with whom Justice Sotomayor joins, concurring.
I join the Court’s opinion in full. I add that, if the State continues to seek a sentence of life without the possibility of parole for Kuntrell Jackson, there will have to be a determi *490 nation whether Jackson “kill[ed] or intended] to kill” the robbery victim. Graham v. Florida, 560 U. S. 48, 69 (2010). In my view, without such a finding, the Eighth Amendment as interpreted in Graham forbids sentencing Jackson to such a sentence, regardless of whether its application is mandatory or discretionary under state law.
In Graham we said that “when compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability.” Ibid, (emphasis added). For one thing, “compared to adults, juveniles have a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and their characters are not as well formed.” Id., at 68 (internal quotation marks omitted). See also ibid. (“[Psychology and brain science continue to show fundamental differences between juvenile and adult minds,” making their actions “less likely to be evidence of ‘irretrievably depraved character’ than are the actions of adults” (quoting Roper v. Simmons, 543 U. S. 551, 570 (2005))); ante, at 471-472. For another thing, Graham recognized that lack of intent normally diminishes the “moral culpability” that attaches to the crime in question, making those that do not intend to kill “categorically less deserving of the most serious forms of punishment than are murderers.” 560 U. S., at 69 (citing Kennedy v. Louisiana, 554 U. S. 407, 434-435 (2008); Enmund v. Florida, 458 U. S. 782 (1982); Tison v. Arizona, 481 U. S. 137 (1987)). And we concluded that, because of this “twice diminished moral culpability,” the Eighth Amendment forbids the imposition upon juveniles of a sentence of life without parole for nonhomicide cases. Graham, supra, at 69, 82.
Given Graham’s reasoning, the kinds of homicide that can subject a juvenile offender to life without parole must exclude instances where the juvenile himself neither kills nor intends to kill the victim. Quite simply, if the juvenile either kills or intends to kill the victim, he lacks “twice di *491 minished” responsibility. But where the juvenile neither kills nor intends to kill, both features emphasized in Graham as extenuating apply. • The Chief Justice’s dissent itself here would permit life without parole for “juveniles who commit the worst types of murder,” post, at 499, but that phrase does not readily fit the culpability of one who did not himself kill or intend to kill.
I recognize that in the context of felony-murder cases, the question of intent is a complicated one. The felony-murder doctrine traditionally attributes death caused in the course of a felony to all participants who intended to commit the felony, regardless of whether they killed or intended to kill. See 2 W. LaFave, Substantive Criminal Law §§ 14.5(a) and (e) (2d ed. 2003). This rule has been based on the idea of “transferred intent”; the defendant’s intent to commit the felony satisfies the intent to kill required for murder. See S. Kadish, S. Schulhofer, & C. Steiker, Criminal Law and Its Processes 439 (8th ed. 2007); 2 C. Torcia, Wharton’s Criminal Law § 147 (15th ed. 1994).
But in my opinion, this type of “transferred intent” is not sufficient to satisfy the intent to murder that could subject a juvenile to a sentence of life without parole. As an initial matter, this Court has made clear that this artificially constructed kind of intent does not count as intent for purposes of the Eighth Amendment. We do not rely on transferred intent in determining if an adult may receive the death penalty. Thus, the Constitution forbids imposing capital punishment upon an aider and abettor in a robbery, where that individual did not intend to kill and simply was “in the car by the side of the road . . . , waiting to help the robbers escape.” Enmund, supra, at 788. Cf. Tison, supra, at 157-158 (capital punishment permissible for aider and abettor where kidnaping led to death because he was “actively involved” in every aspect of the kidnaping and his behavior showed “a reckless disregard for human life”). Given Graham, this holding applies to juvenile sentences of life without *492 parole a fortiori. See ante, at 475-476. Indeed, even juveniles who meet the Tison standard of “reckless disregard” may not be eligible for life without parole. Rather, Graham dictates a clear rule: The only juveniles who may constitutionally be sentenced to life without parole are those convicted of homicide offenses who “kill or intend to kill.” 560 U. S., at 69.
Moreover, regardless of our law with respect to adults, there is no basis for imposing a sentence of life without parole upon a juvenile who did not himself kill or intend to kill. At base, the theory of transferring a defendant’s intent is premised on the idea that one engaged in a dangerous felony should understand the risk that the victim of the felony could be killed, even by a confederate. See 2 LaFave, supra, § 14.5(c). Yet the ability to consider the full consequences of a course of action and to adjust one’s conduct accordingly is precisely what we know juveniles lack capacity to do effectively. Ante, at 471-472. Justice Frankfurter cautioned, “Legal theories and their phrasing in other cases readily lead to fallacious reasoning if uncritically transferred to a determination of a State’s duty toward children.” May v. Anderson, 345 U. S. 528, 536 (1953) (concurring opinion). To apply the doctrine of transferred intent here, where the juvenile did not kill, to sentence a juvenile to life without parole would involve such “fallacious reasoning.” Ibid.
This is, as far as I can tell, precisely the situation present in Kuntrell Jackson’s case. Jackson simply went along with older boys to rob a video store. On the way, he became aware that a confederate had a gun. He initially stayed outside the store, and went in briefly, saying something like “We ain’t playin’ ” or “ T thought you all was playin,’ ” before an older confederate shot and killed the store clerk. Jackson v. State, 359 Ark. 87, 91, 194 S. W. 3d 757, 760 (2004). Crucially, the jury found him guilty of first-degree murder under a statute that permitted them to convict if Jackson *493 “attempted to commit or committed an aggravated robbery, and, in the course of that offense, he, or an accomplice, caused [the clerk’s] death under circumstance manifesting extreme indifference to the value of human life.” Ibid. See Ark. Code Ann. § 5—10—101(a)(1) (1997); ante, at 478. Thus, to be found guilty, Jackson did not need to kill the clerk (it is conceded he did not), nor did he need to have intent to kill or even “extreme indifference.” As long as one of the teenage accomplices in the robbery acted with extreme indifference to the value of human life, Jackson could be convicted of capital murder. Ibid.
The upshot is that Jackson, who did not kill the clerk, might not have intended to do so either. See Jackson v. Norris, 2011 Ark. 49, at 10, 378 S. W. 3d 103, 109 (Danielson, J., dissenting) (“[A]ny evidence of [Jackson’s] intent to kill was severely lacking”). In that case, the Eighth Amendment simply forbids imposition of a life term without the possibility of parole. If, on remand, however, there is a finding that Jackson did intend to cause the clerk’s death, the question remains open whether the Eighth Amendment prohibits the imposition of life without parole upon a juvenile in those circumstances as well. Ante, at 479.