CARLTON, J.,
dissenting:
¶23. I respectfully dissent from the majority’s opinion. The majority retroactively applies Miller v. Alabama, — U.S. —, —, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012), to the present case, and in .turn reverses Hye’s sentence of life imprisonment without parole, and remands the case for resentencing.[1] I disagree with the majority’s application of Miller. I submit that Miller’s prohibition of mandatory life sentences for juveniles constitutes only a procedural safeguard that should be applied prospectively, rather than retroactively. In Miller, the United States Supreme Court did not render all life sentences of juveniles substantively unconstitutional, but instead prohibited mandatory life sentences for juveniles without consideration of individual mitigating factors, in order to prevent disproportionate sentences.[2] Id. at 2471. A review of the record in the present case shows that Hye’s sentence is proportionate when considering the offenses committed and Hye’s background, as required by Miller. I turn to a short review of facts significant to this analysis.
¶ 24. On October 23, 2008, Michael Porter and his wife, Linda, stopped at the Conoco on their way to watch Linda’s grandson play football so that Michael could go inside and ask for directions. While Michael was inside the gas station, Linda noticed three young black males standing near her car. As reflected in the majority opinion, Linda testified that when Michael returned to the car, two of the men surrounded the car and Michael, and they attacked him. Michael struggled to fight off the attackers and managed to get into the car, shut the door, and put the car in gear. Linda testified that during Michael’s attempt to get into the car, she saw a third man, wearing a white towel on his head, walk toward the car, pull out a gun, carefully aim the gun at Michael, and shoot through the car window. The shooter was later identified as Wells. Michael had successfully cranked the car, and when he was shot, the car sped forward down the road. Linda tried to manage the car, eventually running the car into a ditch. Linda then sought help for Michael, but he died from his injuries.
¶ 25. Hye was arrested and incarcerated in November 2009. While in jail, Hye asked an inmate to deliver a note to Tevin Benjamin, another participant in the robbery and murder. The note revealed Hye’s instructions to Benjamin to falsify testimony and relayed the version of the facts they would testify to at trial.
¶ 26. At trial, Hye chose to testify in his own defense. When Hye took the stand, he denied any involvement in Michael’s death, despite the testimony of others to *826 the contrary. Hye even denied being on the property of the Conoco during the robbery and murder. He testified that he saw Wells run from the side of the store, then slip and fall, and that only then did Hye notice Wells had a gun. Hye claimed that he and Benjamin were walking away from the store when he heard a gunshot. However, the evidence presented at trial, including the testimony of Alonzo Kelly, Hye’s friend, established Hye’s participation in the robbery and murder of Michael.
¶ 27. On appeal, Hye contends his mandatory life sentence without parole is unconstitutional because he was sixteen years old[3] at the time of the crime. In Miller, the Supreme Court found that the Eighth Amendment’s prohibition against cruel and unusual punishment guarantees individuals the right not to be subjected to excessive punishment.[4] Miller, 132 S.Ct. at 2483. The Court explained that the punishment should be graduated and proportioned to both the offense and the offender, and the Court acknowledged that the concept of proportionality was central to the Eighth Amendment. Id. Significantly, the Supreme Court also provided that the Court viewed the concept of proportionality “less through a historical prism than according to ‘the evolving standards of decency that mark the progress of a maturing society.’ ” Id. at 2463 (citation omitted).[5]
¶ 28. The Court in Miller also suggested factors to consider when determining whether a juvenile should be sentenced to life or life -without parole, including chronological age, home environment, “circumstances of the homicide offense,” and “the possibility of rehabilitation.” Id. at 2468. In Miller, the juvenile defendant was fourteen years old[6] at the time of the crime. Id. at 2460. His stepfather had physically abused him and his drug-addicted mother had neglected him. Id. at 2462. The defendant had also been in and out of foster homes and had tried to kill himself several times. Id. Due to these factors as well as the defendant’s age, the Miller Court reversed the sentence to enable individual sentencing guidelines, rather than mandatory categorical sentencing guidelines, for that defendant and to allow consideration of evidence of his rehabilitative potential and his culpability in the crimes. Id. at 2469. Miller explains that the trial court lacked information to determine if the sentence reflected a constitutionally proportionate sentence; therefore, the Court reversed the sentence and banned mandatory sentencing guidelines in cases involving juveniles. Id. at 2474-75. However, I submit that Miller failed to expressly require the reopening of cases where the sentence has already been imposed.
¶ 29. Here, the record contains ample evidence of Hye’s maturity, deliberateness of his participation in the crime, his disdain for the law, and his disrespect for the value of human life. Hye grew up in a two-parent household with an older brother. Hye stated that he dropped out of school in the ninth grade. At the time of the crime, Hye was sixteen years old, only *827 days away from Ms seventeenth birthday. Hye’s friend, Benjamin, was already under the supervision of the youth court. Hye testified that earlier in the day on October 23, 2008, he smoked marijuana and cocaine with Kelly. The record also reflects that the owner of the Conoco had banned Hye from entering the premises because he had previously tried to solicit people to purchase cigarettes for him illegally. Hye testified that he had previously been arrested at the Conoco. Contrary to the assertions in Hye’s brief, the evidence shows that he joined up with Wells, whom Hye knew possessed a gun, and others, and went to the Conoco with the specific intent to rob someone to get money to go to the fair.
¶ 30. The State also entered Hye’s “jailhouse” note to Benjamin into evidence as an exhibit for the jury to consider at trial. The jury saw that Hye had tried to exercise influence over another witness, Benjamin, to obtain false testimony by presenting an alternate version of the facts so that the two of them could “go home.” Such evidence reflects Hye’s brazen attempts to unlawfully influence witnesses and peers, his disrespect for the law, and his active participation even after committing the offenses. Linda’s testimony describing the robbery also reflected Hye’s deliberate participation in the crime and murder, showing Hye worked with another attacker to surround Michael and block him from his vehicle when he exited the Conoco. The record shows that Hye deliberately attacked Michael and then prevented Michael’s- escape long enough for Wells to shoot Michael.
¶ 31. Miller provides for an evolving, changing precedent, since the plain language applies an evolving standard of decency. I submit that the application of such an evolving standard satisfies proportionality under the facts of this case, where Hye was almost seventeen when he participated in the robbery and murder; where the evidence shows that Hye actively participated in the crimes; where the record affirmatively shows that he had prior knowledge of the intent to commit the crimes with a gun; and where Hye testified falsely at trial and tried, before trial, to influence the testimony of another witness to obtain an alibi.
¶ 32. The record clearly shows that the sentence in the present case constitutes a proportionate sentence relative to the offender and the crimes committed. As stated, the application of the individual sentencing procedures of Miller constitutes a procedural rule, and such procedural safeguards should not be applied retroactively unless required by clear legislative intent or unless jurisprudence has found the issue related to a substantive unconstitutionality.[7] In Craig, 2013 WL 69128, at *2, the Fifth Circuit recognized that Miller did not “categorically bar all sentences of life imprisonment for juveniles[,] ... only those sentences made mandatory by a sentencing scheme.” As a result, the Fifth Circuit found that Miller failed to satisfy the test for retroactive application. Id. Accordingly, I submit that the holding in Miller, which provides a procedural safeguard against disproportionate sentencing for juveniles, should be applied prospectively on a categorical basis, not retroactively. See Manning, 929 *828 So.2d at 900 (¶ 42); Jackson, 194 S.W.3d at 761.
¶ 33. I, therefore, dissent, and I submit that Hye’s conviction and sentence should be affirmed since the record before us reflects that Hye’s sentence of life imprisonment without parole satisfies the proportionality requirements of the Eight Amendment. Hye’s sentence of life imprisonment without parole failed to result in substantive unconstitutionality.

. See Jackson v. State, 359 Ark. 87, 194 S.W.3d 757, 761 (2004).

. See Craig v. Cain, No. 12-30035, 2013 WL 69128, at *1 (5th Cir. Jan.4, 2013); see also Manning v. State, 929 So.2d 885, 897-98 (¶¶ 33-36) (Miss.2006) (new procedural safeguards are not retroactively applied).

. In Mississippi, once certified as an adult, the defendant will always thereafter be treated as an adult. See Miss.Code Ann. § 43-21-157(8) (Rev.2009). A sister jurisdiction has found that statutes governing juveniles apply protections afforded to minors prospectively, not retroactively. See Jackson, 194 S.W.3d at 761.

. See Craig, 2013 WL 69128, at *2.

. See Craig, 2013 WL 69128, at *2.

. Hye was born on November 12, 1991, and he was almost seventeen years old at the time he participated in the robbery and murder of Michael — nearly three years older than the fourteen-year-old defendant in Miller.

. The retroactive application of statutes is not favored by the courts, and a law is not retroactively applied unless the statute clearly expresses, or necessarily implies, retroactive application. See Sutherland Statutory Construction § 41:4 (7th ed. 2007). A procedural law pertains to the manner, order, or mode, while a substantive law enables rights and duties of a party. Procedural safeguards should be prospectively applied. Id. ■ Only those laws relating to substantive unconstitutionality should be applied retroactively.