PER CURIAM.
In these cases, which we have consolidated for panel and opinion purposes, the defendants, Travis James and Joseph Cot-to, appeal trial court orders denying their motions for postconviction relief.

Background: Travis James

In 1999, James was convicted after jury trial of first degree murder and attempted robbery with a firearm. He was sixteen years old at the time of the offenses on May 14, 1997. Our records from the direct appeal reveal that James confessed to police that he shot at the victim as he ran away following an attempted robbery. James told police that he was aiming for the victim’s legs, but the victim fell as he fired two shots in his direction. The trial court sentenced him to the mandatory sentence of life without possibility of parole for the murder and a concurrent term of thirty years in prison with a 25-year mandatory minimum for the attempted armed robbery.
This court affirmed the convictions and sentences on direct appeal in 2003. James v. State, 843 So.2d 933, 935 (Fla. 4th DCA), rev. denied, 855 So.2d 621 (Fla.2003). In 2004, a motion to correct sentence was granted, and the sentence for the attempted armed robbery was vacated. He was resentenced to fifteen years in prison concurrent with count one.
In February 2013, James filed the motion for postconviction relief at issue in this appeal. He claims that his mandatory sentence of life without possibility of parole for the murder committed when he was sixteen years old is unconstitutional pursuant to Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). The trial court denied the motion as untimely and cited Geter v. State, 115 So.3d 375 (Fla. 3d DCA 2012), and Gonzalez v. State, 101 So.3d 886 (Fla. 1st DCA 2012), which hold that Miller does not apply retroactively to cases that were final on direct review at the time Miller was decided. The trial court also noted that the motion was not under oath.

Background: Joseph Cotto

On April 27, 1999, just weeks before his 18th birthday, Joseph Cotto broke into the home of the two elderly victims while they were sleeping. He armed himself with a knife and brutally murdered them. After he was captured, Cotto confessed and told police that he killed the victims because “he wanted to.” He admitted taking various actions designed to delay detection of decomposition.
In March 2003, Cotto entered a negotiated plea with the state which agreed to waive the death penalty. The court sentenced Cotto to two consecutive life sentences for first-degree murder in counts one and two. The court also imposed a concurrent sentence of life in prison for armed burglary in count three[1] and five years in prison for grand theft of a motor vehicle. He did not appeal.
In February 2013, he filed a rule 3.800(a) motion to correct illegal sentence *617 claiming that his life sentences for the murder convictions were unconstitutional under Miller because he was seventeen years old at the time of the offenses. The trial court denied the motion based on the state’s response which argued that the motion was not under oath, as required by rule 3.850, and did not comply with content requirements. The state also asserted that the Office of the Public Defender had not been appointed to file a postconviction motion in the case. Finally, the state asserted that, if the claim could be heard, it was without merit because Miller does not apply retroactively. The state argued that Geter and Gonzalez were binding on the circuit court.

Discussion

If the trial courts had denied the motions based solely on the lack of an oath, or some other pleading deficiency, we would remand for the court to provide an opportunity to amend in order to cure this deficiency. See Spera v. State, 971 So.2d 754, 761 (Fla.2007). However, the trial court in both cases ruled upon the retroactivity question, and the question is properly before us.
We agree with the Second District Court of Appeal’s analysis in Toye v. State, 133 So.3d 540, 547 (Fla. 2d DCA 2014), and hold that Miller applies retroactively. We certify that this decision conflicts with the decisions in Geter and Gonzalez.[2]
Because the Florida Supreme Court is presently considering the issue in Falcon v. State, 111 So.3d 973 (Fla. 1st DCA), rev. granted, No. SC13-865, 2013 WL 6978507 (Fla. June 3, 2013), we stay issuance of our mandate in this case. We have a number of cases pending in this court where this issue has been raised, and we will stay these cases by order pending a resolution in Falcon.
To further the discussion, we write to express additional reasons why Miller's holding should be given retroactive effect.

The Supreme Court of the United States has Already Given the Holding in Miller Retroactive Effect

The decision in Miller addressed two cases involving two differently situated juvenile offenders. Evan Miller’s case came to the Court following affirmance by the state court on direct appeal. Miller, 132 S.Ct. at 2463. Kuntrell Jackson, on the other hand, had been convicted in 1999, and his conviction was affirmed on direct appeal in 2004. Jackson v. State, 359 Ark. 87, 194 S.W.3d 757 (2004). He did not petition for postconviction relief. In January 2008, he filed a petition seeking a writ of habeas corpus from a state circuit court. Jackson v. Norris, 2011 Ark. 49, 378 S.W.3d 103, 104 (2011). The circuit court dismissed, and the Supreme Court of Arkansas affirmed. Id.
The Supreme Court of the United States granted certiorari as to Kuntrell Jackson’s case and reversed and remanded for further proceedings. Miller, 132 S.Ct. at 2461-63. The Supreme Court has already given its decision retroactive effect by granting relief to Kuntrell Jackson whose conviction and sentence had already become final on direct review.
Were we to deny the appellants in this case the same relief, presumably they could pursue their cases through the courts, and the Supreme Court would, pursuant to the doctrine of stare decisis, afford appellant equal protection as Kuntrell Jackson. Thus, we are bound to give Miller ’s holding retroactive effect.

*618
The Second Strand of Precedent Applied in Miller Has Been Applied Retroactively

In Miller, the Court applied two strands of precedent. “The first has adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty.” Id. at 2463 (citing Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), which held that sentencing a juvenile to life without parole for a non-homicide offense violates the Eighth Amendment). See, e.g., Kennedy v. Louisiana, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) (death penalty for non-homicide); Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (death penalty for children); Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (death penalty for the mentally retarded).
This first strand of precedent is clearly substantive as it prohibits a kind of punishment for a class of offenders. The holdings in these cases are “retroactive” in that the prohibition on the penalty applies to all offenders — regardless of when the punishment was imposed. Thus, we have held that Graham applies retroactively. St. Val v. State, 107 So.3d 553, 555 (Fla. 4th DCA 2013).
The second strand of precedent is not as clear. This strand involves cases that “prohibited mandatory imposition of capital punishment, requiring that sentencing authorities consider the characteristics of a defendant and the details of his offense before sentencing him to death.” Miller, 132 S.Ct. at 2463-64 (citing Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), which held that a statute requiring a mandatory death sentence was unconstitutional, and Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), which held that sentencing authorities must have discretion to consider mitigating factors in determining whether to impose a death sentence). Lockett — which altered what must be considered when determining whether to impose a death sentence — was applied retroactively. Riley v. Wainwright, 517 So.2d 656, 657 (Fla.1987).
In Geter, the Third District Court of Appeal based much of its analysis on its conclusion that the decision in Miller is procedural rather than substantive. 115 So.3d at 378-82. Whether that is entirely accurate is subject to argument. By invalidating a statute that mandated a life without parole sentence, the Miller decision impacts the range of possible penalties available to this class of offenders. Nevertheless, even if the Miller decision is procedural, this is not determinative of the retroactivity question. Certain “procedural” changes have been found to be a development of fundamental significance. Lockett, which the Florida Supreme Court has applied retroactively, is a fine example.
While Lockett involved the death penalty, and death is often said to “be different,” the Court in Miller and Graham went to great lengths to explain how a sentence of life without possibility for parole is like imposing a death sentence on a juvenile. Graham, 560 U.S. at 69-70, 130 S.Ct. 2011; Miller, 132 S.Ct. at 2466-67. A juvenile sentenced to life without parole has been sentenced to die in prison except for the possibility of executive clemency which the Court concluded did not cure the Eighth Amendment violation.
We conclude that, like Lockett, Miller is a development of fundamental significance for purposes of retroactivity analysis under Witt v. State, 387 So.2d 922, 929 (Fla.1980).

The Impact on the Administration of Justice

The decisions in Geter and Gonzalez gave great weight to the “floodgates” ar *619 gument when assessing the third factor of the Witt test. See Gonzalez, 101 So.3d at 887-88 (quoting Geter).
Judge Emas in his dissent in Geter noted that in 2009 there were 266 inmates statewide whose cases would be affected: .26% of Florida’s inmate population at the time. 115 So.3d 385, 399. According to the Staff Analysis for Senate Bill 1350, which failed to pass during the 2013 legislative session, the Florida Department of Corrections reported that there may be up to 222 inmates statewide that would need to be resentenced under Miller. In view of this, the floodgates argument is less than persuasive.
The impact on the administration of justice need not be substantial. The Fifth District Court of Appeal has held that the proper remedy for defendants being sentenced under the presently unconstitutional capital sentencing scheme is to revive the prior version of section 775.082(1), Florida Statutes (1993), which provided for a mandatory sentence of life without possibility of parole for 25 years. Horsley v. State, 121 So.3d 1130, 1131 (Fla. 5th DCA), rev. granted, SC13-1938, 2013 WL 6224657 (Fla.2013).
Thus, if the statutory revival remedy is adopted, the resentencing of these 222 inmates would involve a limited proceeding to determine whether the circumstances of the ease are such that life without possibility of parole should be imposed or whether the defendant should be sentenced so as to qualify for parole after 25 years. Miller, 132 S.Ct. at 2469 (quoting Graham, 560 U.S. at 75,130 S.Ct. 2011).
The remedy of reviving the possibility of parole for juvenile murderers balances the competing interests at stake. On one end of the scale is the rehabilitative interest of the offender which was at the heart of the Miller and Graham decisions. The Court in Miller and Graham emphasized:
A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does forbid States from making the judgment at the outset that those offenders never will be fit to reenter society.
Graham, 560 U.S. at 75, 130 S.Ct. 2011.
The Court in Miller adopted this same reasoning as to life without parole sentences for homicide offenses. What Miller and Graham require is a sentencing scheme that allows the court to consider a juvenile’s suitability for rehabilitation and a possibility for release. The Court in Miller did not foreclose life without parole sentences for juvenile murderers but observed:
[W]e do not consider Jackson’s and Miller’s alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger. But given all we have said in *620 Roper, Graham, and this decision about children’s diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in Roper and Graham of distinguishing at this early age between “the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.” Roper, 543 U.S., at 573, 125 S.Ct. 1183; Graham, 560 U.S. at 68, 130 S.Ct. at 2026-2027. Although we do not foreclose a sentencer’s ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.
Miller, 132 S.Ct. at 2469.
On the other end of the scale, weighing against the rehabilitative interest of the offender, is the clear legislative intent that those convicted of first-degree capital murder receive the harshest penalty permitted by law. Also weighing on this end of the scale is the strong interest in finality for criminal sentences, and the retributive interests and respect for the family of the victim(s). The harsh sentence that has been created by the legislature serves deterrent functions as well.
Permitting for the possibility of parole assures that a convicted murderer does not leave prison unsupervised. Society has a strong interest in ensuring that those who commit the most heinous of crimes are punished severely. The rehabilitation of such offenders must be scrutinized closely and parole supervision after release from prison provides a fair balance in this equation.
We do not believe that de novo resentencing is required by Miller. All that is required is a sentence that provides for the possibility of parole and for the defendant to actualize the “heightened capacity for change” inherent in youth. The question at a Miller resentencing should be whether the circumstances present the “uncommon” occasion where the harshest penalty of life without parole is appropriate. For these reasons, we disagree that retroactive application would have an adverse impact on the administration of justice.

Conclusion

We agree with the Second District Court of Appeal’s analysis in Toye v. State, 133 So.3d 540 (Fla. 2d DCA 2014), and hold that Miller v. Alabama applies retroactively to cases on collateral review. We certify that this decision conflicts with Geter v. State, 115 So.3d 385 (Fla. 3d DCA 2013) (en banc), and Gonzalez v. State, 101 So.3d 886 (Fla. 1st DCA 2012).
The trial courts erred in denying the postconviction motions on appeal in these cases. We must reverse and remand for further proceedings.
Because the issue in this case is presently on review by the Florida Supreme Court in Falcon v. State, 111 So.3d 973 (Fla. 1st DCA), rev. granted, No. SC13-865, 2013 WL 6978507 (Fla. June 3, 2013), and we are confident that the court will make a full determination of the issues presented, we stay issuance of our mandate in this case pending the outcome of that proceeding. Other cases pending with this court raising this same issue shall be stayed by order pending the outcome in Falcon.

Reversed and remanded. Mandate stayed.

DAMOORGIAN, C.J., and GROSS, J., concur.
GERBER, J., dissents with an opinion.

. In his Initial Brief, appellant’s counsel argues that the life sentence for the non-homicide count is illegal based on Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). That claim was not raised in the motion below and will not be addressed for the first time in this appeal. Atwell v. State, 128 So.3d 167, 169 (Fla. 4th DCA 2013).

. The Fifth District Court of Appeal has followed Geter and Gonzalez in citation opinions. Anderson v. State, 105 So.3d 538 (Fla. 5th DCA 2013); Ferrell v. State, 105 So.3d 539 (Fla. 5th DCA 2013).