Howard VAGI *v.* STATE of Arkansas

CR 88-24                                        757 S.W.2d 533

Supreme Court of Arkansas
Opinion delivered October 3, 1988

*Henry Morgan*, and *Taylor A. King*, for appellant.

*Steve Clark*, Att'y Gen., by: *William F. Knight*, Asst. Att'y Gen., for appellee.

JOHN I. PURTLE, Justice. The appellant filed a petition for post-conviction relief pursuant to A.R.Cr.P. Rule 37 in the Circuit Court of Clark County three years after pleading guilty to first degree murder. The appellant had agreed to plead guilty to first degree murder in exchange for the state reducing the charge from capital murder. The petition alleged that the state had promised Vagi that he would not have to serve more than ten years on his life sentence. After an evidentiary hearing on the petition, the trial court determined that it did not have the authority to order the state to release Vagi at the end of ten years. On appeal the appellant insists that the trial court did have the power to order the "contract" concerning his sentence specifically performed, and further that the appellant's Fourth Amendment rights had been violated. (We are uncertain as to how the Fourth Amendment is implicated in appellant's argument. We must surmise that the argument is based on the Due Process Clause of the *Fourteenth* Amendment.) For reasons stated below we hold that the decision of the trial court was correct.

The basic facts in this case are that Vagi was a hired triggerman in the murder of a Clark County resident. The victim's wife and an associate were both convicted of capital murder in separate trials. Both convictions were overturned and the cases retried. The appellant had cooperated in all of these trials and had furnished the information which was the basis for the conviction of the other two co-defendants. In exchange for the appellant's cooperation the prosecuting attorney agreed that if he would enter a guilty plea, the charge would be reduced to first degree murder. The evidence is conflicting as to whether the prosecutor in fact promised appellant that he would be paroled in seven to ten years. There is evidence that appellant's trial attorney at the time told him that he might get out in nine to fifteen years, but that, in any event, there would have to be a commutation of his sentence before he would be eligible for parole at all.

The proceedings concerning the plea and sentencing are quite clear. The appellant simply entered a guilty plea to first

degree murder and was sentenced to life imprisonment. However, at the Rule 37 hearing the trial judge seemed to indicate that the appellant probably did not understand that his sentence would have to be commuted before he would become eligible for parole. There was also a discussion prior to entry of the guilty plea that both the prosecuting attorney and the sheriff usually must write letters recommending commutation of a sentence. The appellant insists that the prosecutor and sheriff agreed to write such letters prior to the plea agreement. They denied having made such promises. Furthermore, there is no indication that these letters will not be written.

Pursuant to A.R.Cr.P. Rule 37.4, if the court finds that the prisoner is entitled to relief, then the court "may set aside the original judgment, discharge the prisoner, resentence him, grant a new trial, or otherwise correct the sentence as may appear appropriate in the proceedings." The appellant contends that the court, after finding that he did not understand all the ramifications of his guilty plea, was authorized to "resentence" him. Without doubt the court has the power to "resentence" or "otherwise correct the sentence" when it is found that an error occurred in the proceedings. However, in the present case the court did not find that an error had occurred in the sentencing. Rather, the court found that it did not have the authority to enforce the agreement, if one existed, because such agreement involved the executive branch.

The appellant's chief argument is that the state has failed to keep the agreement. In *Hall* v. *State*, 285 Ark. 38, 684 S.W.2d 261 (1985), we stated: "We agree the state must keep any bargain it has made, *Santobello* v. *New York*, 404 U.S. 257 (1971), and if it does not the guilty plea may be withdrawn. *Mabry* v. *Johnson*, 467 U.S. 504 (1984)." We reaffirmed this position in *Caldwell* v. *State*, 295 Ark. 149, 747 S.W.2d 99 (1988). There we upheld the right of the state to back out of any proposed plea bargain at any time before the guilty plea is accepted by the court. (Caldwell had accepted a plea offer but the new prosecutor had withdrawn the offer prior to acceptance by the court.)

The question presented in *Mabry* v. *Johnson*, supra, was "whether a defendant's acceptance of a prosecutor's proposed

plea bargain creates a constitutional right to have the bargain specifically enforced." *Mabry* held that a plea bargain agreement standing alone is without constitutional significance. The United States Supreme Court stated that it is only after the bargain has been embodied in the judgment of the court that a constitutionally protected interest arises. In the words of Justice Stevens: "The Due Process Clause is not a code of ethics for prosecutors. . . ." *Mabry.*

The *Santobello* opinion is instructive in the case before us. Santobello had agreed to plead guilty to a lesser included offense in exchange for the prosecutor's promise to make no recommendation as to the sentence. The guilty plea was entered and a sentencing date set. Before sentencing, the trial judge retired and the new judge was told by the prosecutor that he recommended a sentence of one year in prison. Santobello objected to this recommendation. The new judge then announced that it didn't make any difference what the prosecutor recommended; that he was going to do the sentencing anyway and that in his opinion Santobello should serve time in the penitentiary. Certiorari was granted in order to determine whether the state's failure to keep the commitment concerning the sentence required a new trial. The United States Supreme Court remanded the case to the state court to determine whether the petitioner should be granted specific performance of the agreement or the opportunity to withdraw his guilty plea.

The *Santobello* opinion pointed out that such an agreement between the prosecutor and the accused, loosely called a "plea bargain," is an essential tool of the administration of justice. The court correctly observed that if every criminal charge were subjected to a full-scale trial, both the state and federal governments would have to multiply their personnel and facilities many times over. The *Santobello* opinion stated:

> Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to

continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.

Likewise, this tool in the administration of justice has been endorsed by this court. *Garmon*, infra. The state has not attempted to withdraw from the agreement it entered into with the appellant. The guilty plea was presented to the court and the state's recommendation was also announced in the presence of the court. Accordingly, the court accepted the guilty plea and recommendation of the prosecutor and sentenced the appellant to a term of life imprisonment.

After serving only three years of the life sentence, the appellant filed a Rule 37 petition. We are not entirely certain of the grounds upon which he alleges he is entitled to relief. However, the thrust of his argument is that the state must perform its agreement that the appellant serve no more than ten years. He does not point out how the state has failed to live up to the agreement. Even if we were to accept the appellant's statement that he was promised parole after ten years, he is not entitled to relief at this time. It is reasonably clear from the record that all of the parties involved in this agreement, with the possible exception of the appellant, fully understood that a person serving a life sentence is not eligible for parole. Furthermore, it is obvious that, under normal circumstances, at some point in time, a life sentence is commuted to a term of years by the executive branch of the government; only then does the prisoner become eligible for parole.

A somewhat similar situation arose in the case of *Garmon v. State*, 290 Ark. 371, 719 S.W.2d 699 (1986). Garmon also filed a Rule 37 petition attacking his sentence on the grounds that he was misinformed by his attorney about the length of time he would have to serve pursuant to the sentence he received. The attorney had told Garmon that kidnapping was a class A felony. After the sentence was pronounced it was determined that kidnapping was a class Y felony which authorized a longer sentence. We held that Garmon was not prejudiced by the error even if the risk of a greater sentence might have influenced his

acceptance of the plea bargain. The opinion went on to state that the risk of a long term of imprisonment creates an incentive to negotiate a plea. Certainly it can be said that a life sentence, with the hope of parole at some future date, is an incentive to keep from being tried on a charge which could result in a death sentence or life without parole. In *Garmon* his attorney had written a letter which stated: "Normal parole eligibility was 1/6 of the sentence." In fact, Garmon was required to serve 1/2 of a longer sentence. Therefore, erroneous advice concerning parole eligibility does not automatically render a guilty plea involuntary. *Haywood v. State*, 288 Ark. 266, 704 S.W.2d 168 (1986).

The appellant acknowledged the receipt of a letter from his attorney, prior to entry of his guilty plea, that it was the understanding of the attorney that the average time served on a life sentence was from nine to fifteen years. The letter also clearly told the appellant that eligibility for parole varied depending on the conduct of the prisoner and the policies of the Arkansas Department of Correction. At no point in the record do we find a flat promise that the appellant would be out in ten years. He was twenty-one years old and had completed two years of college at the time of his guilty plea. Furthermore, he has not denied his guilt, nor requested that his plea be vacated.

There is nothing in the record which requires that the appellant be granted any relief at this time. Neither is there anything which indicates that he will not be eligible for parole at some time in the future, perhaps within ten years. Under the circumstances we hold the trial court properly denied the petition.

Affirmed.

DUDLEY and NEWBERN, JJ., concur.

ROBERT H. DUDLEY, Justice, concurring. I reach the same result as the majority, but do so on an entirely different basis.

The appellant was charged with capital felony murder. As the result of plea bargaining, the charge was reduced to first degree murder, the appellant pleaded guilty to that lesser charge, and the State recommended a life sentence. The trial court followed that recommendation. Three years later the appellant filed a Rule 37 post-conviction petition. In it, he alleged that he pleaded guilty in exchange for the recommendation of a life

sentence only because the prosecuting attorney assured him that a life sentence would allow him to be paroled within ten years. In fact, he will not be eligible for parole until his sentence is commuted to a term of years, if that is ever done by the Governor.

The obvious primary issue for the trial court at the post-conviction hearing was whether the plea was based upon an agreement with the prosecutor for parole within ten years. It is impossible to clearly understand the trial court's ruling, if any, on this point. However, under the peculiar facts of this case I would still affirm.

On the one hand, if the trial court found that there was no such agreement, the appeal would be affirmed since there was substantial evidence that no such agreement was made.

On the other hand, if the trial court found, as I believe it did, that there was such an agreement, this case is much more complex. The trial judge stated, in pertinent part:

> If you had said to me life as a sentence on first degree murder, I would know that you meant life and I would know the requirements to be commuted to a number of years before there can be any possibility of parole. I don't believe Mr. Vagi understood it quite that way. I cannot specifically perform the contract because I cannot order a commutation. I believe I would be restricted either to deny the Rule 37 or to find a justification for Rule 37 and offer the State the option of retrying Mr. Vagi on the original charge, capital felony murder. If I knock out the plea bargain or plea agreement, that's where we stand.

A finding that a plea of guilty was coerced by the false promise of a prosecutor entitles a defendant to relief because the Due Process Clause has been violated. *Mabry* v. *Johnson*, 467 U.S. 504 (1984); *Santobello* v. *New York*, 404 U.S. 257 (1971); *Hall* v. *State*, 285 Ark. 38, 684 S.W.2d 261 (1985).

In *Freeman* v. *State*, 258 Ark. 617, 527 S.W.2d 909 (1975), a case exactly in point, the prosecutor told the accused that a confession "would not result in more than 21 years." The accused confessed but then received a life sentence. We reversed, holding that the confession was involuntary.

Accordingly, the appellant is entitled to withdraw his plea of guilty, and he is entitled to that relief now. He does not have to wait ten years as the majority opinion states. However, in his brief the appellant indicated that he does not want to withdraw his plea, and in oral argument his attorney expressly stated that the appellant did not want the relief of being allowed to withdraw his plea of guilty. The only relief he wants is specific performance, and further, he contends that specific performance is a sentence of forty years.

Some state courts have given specific performance in cases of prosecutorial culpability. *See Santobello* v. *New York, supra* (Douglas, J., concurring); Note, *Guilty Plea Bargaining: Compromises By Prosecutors to Secure Guilty Pleas*, 112 U. Pa. L. Rev. 865, 876 (1964). However, appellant is not entitled to that relief. Under Arkansas law there is no entitlement to have the trial court impose a recommended sentence since a plea bargain does not bind the trial court. *Varnedare* v. *State*, 264 Ark. 596, 573 S.W.2d 57 (1978) (overruled on another issue in *White* v. *State*, 290 Ark. 130, 717 S.W.2d 784 (1986)); Ark. R. Crim. P. 25.3. It is illusory to argue that the trial court must specifically perform a bargain, when it was not involved in the bargain. There is a critical difference between an entitlement and a mere hope or expectation that the trial court will follow the prosecutor's recommendation. *See Olin* v. *Wakinekona*, 461 U.S. 238, 248-251 (1983).

Accordingly, I would not grant the relief of specific performance. I would also deny the relief of withdrawal of the guilty plea, but only because the appellant rejects such relief.

I concur in the result.

NEWBERN, J., joins in this concurrence.