

Cite as 2014 Ark. 19

# SUPREME COURT OF ARKANSAS

No. CV–12–407

| | |
|---|---|
| RAY HOBBS IN HIS CAPACITY AS DIRECTOR OF THE ARKANSAS DEPARTMENT OF CORRECTION<br><br>APPELLANT<br><br>V.<br><br>BARRY TURNER<br>APPELLEE | **Opinion Delivered** January 23, 2014<br><br>APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. CV-11-277-5]<br><br>HONORABLE JODI RAINES DENNIS, JUDGE<br><br><u>AFFIRMED ON DIRECT APPEAL;</u> <u>AFFIRMED ON CROSS-APPEAL</u>. |

**JIM HANNAH, Chief Justice**

In this case, we review habeas corpus proceedings involving the resentencing of a juvenile offender pursuant to the United States Supreme Court's decision in *Graham v. Florida*, 560 U.S. 48 (2010). In 1991 appellee Barry Turner, pled nolo contendere[1] in the Pulaski County Circuit Court to committing on May 2, 1991, the crimes of kidnapping, sexual abuse in the first degree, aggravated robbery, theft of property, fraudulent use of a credit card, and theft by receiving.[2] Upon accepting the pleas, the circuit court sentenced him to terms of life, five years, twelve years, three years, three years, and three years,

---

[1]We note Turner's claim that, although the judgment and commitment order reflects a no-contest plea to all charges, the plea transcript shows that Turner pleaded no contest to sexual abuse in the first degree and guilty to all other charges.

[2]Turner's date of birth is December 19, 1973, making him seventeen years old when he committed the offenses.

SLIP OPINION

respectively. The circuit court imposed the kidnapping and aggravated-robbery sentences consecutively, to be served consecutively to his concurrent sentences for fraudulent use of a credit card and theft by receiving, resulting in a total term of life imprisonment plus fifteen years. *Id.*

On May 17, 2010, the United States Supreme Court held in *Graham* "that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." 560 U.S. at 74. On May 11, 2011, Turner, who was incarcerated at the Maximum Security Unit of the Arkansas Department of Correction in Tucker, filed a petition for writ of habeas corpus in the Jefferson County Circuit Court and alleged that, pursuant to the Court's decision in *Graham*, his sentence of life imprisonment for the nonhomicide offense of kidnapping committed when he was seventeen years old was unconstitutional. Turner requested that the Jefferson County Circuit Court modify this sentence to a term between ten and forty years,[3] or, in the alternative, that the circuit court vacate his life sentence and transfer his case to the Pulaski County Circuit Court for resentencing. Appellant, the State,[4] filed a response to Turner's petition and conceded that Turner had made a probable-cause showing that he was being illegally detained. Although the State agreed that Turner's sentence ran afoul of *Graham*, it did not concede that Turner should be resentenced in the range of ten to forty years. Rather, the State contended that

---

[3]Turner was sentenced for kidnapping pursuant to Arkansas Code Annotated section 5-4-401(a) (1987), which authorized a sentence of ten to forty years, or life.

[4]Although Ray Hobbs, Director, Arkansas Department of Correction, is the nominal party, we will identify appellant as the "State."



what made Turner's sentence unconstitutional was the ineligibility for parole, not his sentence to life and, therefore, the circuit court should sever the parole statute, making Turner's kidnapping sentence life with the possibility of parole. Turner responded that he could not be sentenced to life with the possibility of parole because that sentence was not authorized by the legislature, and the circuit court had no authority to create a new sentence. The State argued that if the circuit court concluded that it could not impose a sentence of life with the possibility of parole, then it should sentence Turner to forty years' imprisonment, the maximum remaining term of imprisonment, which is commensurate with the maximum term of imprisonment that was originally imposed. Further, the State contended that Turner's sentence for kidnapping should be imposed consecutively to his twelve-year sentence for aggravated robbery and his three-year concurrent sentences for fraudulent use of a credit card and theft by receiving because those sentences were legally imposed to run consecutive to Turner's sentence for kidnapping.

On November 8, 2011, the circuit court conducted a hearing regarding the "sentencing range available" for Turner. Turner contended that, pursuant to *Graham*, he was entitled to de novo sentencing because the original sentencing court did not give adequate consideration to his young age; accordingly, he could be sentenced in the range of ten to forty years. The State responded that *Graham* left to the states how to implement the decision, which, in Arkansas, was to be implemented with the state's habeas procedure. According to the State, the circuit court was limited to curing the illegality in the sentence so that Turner should be sentenced to the maximum available under the law.

3



The court subsequently held a sentencing proceeding on March 7, 2012. The State again contended that Turner should be sentenced to life with the possibility of parole, or, alternatively, that Turner should be sentenced to forty years. Turner asked the circuit court to consider his young age at the time of the offense and noted that in *Graham*, the Court recognized that juveniles are different from adults in ways that are relevant to their criminal culpability. Turner asserted that current Arkansas sentencing guidelines would recommend a sentence of twenty-two years "for an adult in a similar situation," and argued that a sentence of twenty-two years would be appropriate for him. The State responded that, by virtue of the fact that Turner was being resentenced and could no longer be sentenced to life imprisonment without parole, he had already gotten the benefit of the *Graham* decision and was not entitled to a further reduction in sentence.

At the conclusion of the hearing, the court sentenced Turner to a term of forty years' imprisonment for the kidnapping conviction, with the original sentences to remain the same, resulting in a total term of fifty-five years' imprisonment. The circuit court found that it lacked the authority to sentence Turner to the State's proposed sentence of life with the possibility of parole because courts are "required to sentence according to statute," and that sentence was not available under the statute. Further, the circuit court found that it only had the authority to change Turner's sentence for kidnapping from life to forty years because the sentencing court's intent in 1991 was for Turner to receive the maximum sentence for kidnapping. The court entered an order memorializing its decision on April 5, 2012.

The State appeals, contending that the circuit court erred as a matter of law by

sentencing Turner to a term of forty years' imprisonment for his kidnapping conviction and that Turner should have been sentenced to a term of life imprisonment with the possibility of parole. Turner cross-appeals and contends that the circuit court erred in mechanically resentencing him to the maximum term of years available under the statute without giving adequate consideration to his young age as required under *Graham*. He further contends that the circuit court was not restricted to simply reducing his sentence to the statutory maximum because the underlying purpose for imposing the maximum sentence is no longer constitutional. Finally, Turner asserts that, based on the seriousness level of his offense and his criminal history, if sentenced today under the Arkansas Sentencing Guidelines, *see* Arkansas Code Annotated section 16-90-803 (Repl. 2006), he would be sentenced to twenty-two years, even without consideration of his young age at the time of the offense. Accordingly, he contends that, because juveniles are less culpable than adults, any sentence exceeding twenty-two years is disproportionate.

In *Graham*, the United States Supreme Court held that the Eighth Amendment "forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender." 560 U.S. at 75. The Court explained that

> [a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that

persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does forbid States from making the judgment at the outset that those offenders never will be fit to reenter society.

*Id.*

Turner was sentenced in accordance with the law at the time he committed the Class Y felony of kidnapping. Arkansas Code Annotated section 5-4-401(a)(1) (1987) authorized a term of imprisonment for a Class Y felony of ten to forty years or life. The State claims that Turner's original sentence of life was unconstitutional under *Graham* not because he was sentenced to life under section 5-4-401(a)(1), but because he was ineligible for parole pursuant to sections 16-93-607(c)(1) and (d) (1987).[5]

Section 16-93-607(c)(1) states that

[i]nmates under sentence of death or life imprisonment without parole shall not be eligible for release on parole but may be pardoned or have their sentence commuted by the Governor, as provided by law. *Inmates sentenced to life imprisonment shall not be eligible for release on parole unless the sentence is commuted to a term of years by executive clemency.* Upon commutation, the inmate shall be eligible for release on parole as provided in this section.

(Emphasis added.)

Section 16-93-607(d) states that

[a]ny person under the age of twenty-one (21) years who is first convicted of a felony and committed to the first offender penal institution or the Department of Correction *for a term of years* shall be eligible for parole at any time unless a minimum time to be served is imposed consisting of not more than one-third (1/3) of the total time sentenced.

(Emphasis added.)

---

[5]Parole eligibility is determined by the law in effect at the time the crime is committed. *Pitts v. Hobbs*, 2013 Ark. 457, at 4 (per curiam).



The State contends that the emphasized language of section 16-93-607(c)(1) and (d) was unconstitutional as applied to Turner because it rendered him ineligible for parole. The State, therefore, argues that, because the constitutional violation in Turner's sentence was his ineligibility for parole, not the life sentence itself, the circuit court should have cured the constitutional infirmity by severing the offending language of section 16-93-607(c)(1) and (d), rather than sentencing him to a term of years.

We reject the State's contention that the parole-eligibility statute can be severed so that a sentence of life with the possibility of parole is available. Generally, in Arkansas, life means life. With exceptions that do not apply in this case, the legislature has not provided for a sentence of life with the possibility of parole in over forty years. *See* Ark. Code Ann. § 16-93-601(b)(1) (Repl. 2006)(stating that individuals sentenced to life imprisonment for felonies committed before March 1, 1968, and individuals sentenced to life imprisonment for felonies committed after February 12, 1969, and before April 1, 1977, are not eligible for parole unless the sentence is commuted to a term of years by executive clemency); *id*. § 16-93-604(b)(1) (Repl. 2006) (stating that individuals sentenced to life imprisonment for felonies committed on or after April 1, 1977, and before April 1, 1983, are not eligible for parole unless the sentence is commuted to a term of years by executive clemency); *id*. § 16-93-607(c)(1) (Repl. 2006) (stating that individuals sentenced to life imprisonment for felonies committed on or after April 1, 1983, but before January 1, 1994 are not eligible for parole unless the sentence is commuted to a term of years by executive clemency); *id*. § 16-93-614(c)(1)(B) (Supp. 2013) (stating that inmates sentenced to life for offenses committed after

January 1, 1994 are not eligible for transfer to community corrections unless the sentence is commuted to a term of years by executive clemency); *id.* § 16-93-601(b)(2) (Repl. 2006) (stating that individuals sentenced to life on and after March 1, 1968, and prior to February 12, 1969, are parole eligible after serving fifteen years).

It is clear that, at the time Turner committed the offense of kidnapping, the sentence of life with the possibility of parole was not authorized by the legislature.[6] The circuit court correctly ruled that it did not have the authority to create a sentence that was not authorized by the legislature and that the maximum sentence available after invalidation of the life sentence is forty years under Arkansas Code Annotated section 5-4-401(a)(1) (1987). *See, e.g., State v. Britt*, 368 Ark. 273, 278, 244 S.W.3d 665, 669 (2006) (stating that sentencing is entirely a matter of statute, that the circuit court has no authority to sentence a defendant except as provided by statute, and that this court defers to the General Assembly in all matters related to sentencing). The circuit court is affirmed on direct appeal.

On cross-appeal, Turner contends that the circuit court erred in mechanically

---

[6] We recognize that parole was *technically* possible because an individual sentenced to life could be eligible for parole *if* the sentence was commuted to a term of years by executive clemency. *See Smith v. State*, 300 Ark. 291, 293, 778 S.W.2d 924, 926 (1989) ("While it is true that a sentence to life imprisonment imposed after April 1, 1983, carries no possibility of parole, Ark. Code Ann. § 16-93-607(c)(1) (1987), this court has recognized that such sentences are often commuted, thus making parole a possibility. *Vagi v. State*, 296 Ark. 377, 757 S.W.2d 533 (1988)."). Nevertheless, the *Graham* Court rejected the idea that the possibility of commutation provides an adequate opportunity for release for a juvenile defendant sentenced to life for a nonhomicide offense, stating that the "remote possibility" of executive clemency "does not mitigate the harshness of the sentence." 560 U.S. at 70; *see also Solem v. Helm*, 463 U.S. 277, 301 n.28 (1983) (noting that the Court has "implicitly recognized that the possibility of commutation is not equivalent to the possibility of parole"). *Solem v. Helm*, 463 U.S. 277, 301 n.28 (1983).

SLIP OPINION

resentencing him to the maximum term of years and violated the Supreme Court's holdings in *Graham* and *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455 (2012), because it did not consider his age when resentencing him. In *Graham*, the Court's categorical ban on life-without-the-possibility-of-parole sentences for juveniles convicted of nonhomicide offenses was based on the Court's reasoning that, because juveniles have diminished culpability and greater prospects for reform, "they are less deserving of the most severe punishments." 560 U.S. at 68 (citing *Roper v. Simmons*, 543 U.S. 551, 569 (2005)). The Court recognized that "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds"—for example, "parts of the brain involved in behavior control continue to mature through late adolescence." *Id*.

Based on similar reasoning, the Court in *Miller* held that "the Eighth Amendment forbids a sentencing scheme that *mandates* life in prison without the possibility of parole for juvenile offenders." ___ U.S. at ___, 132 S.Ct. at 2469 (emphasis added). The Court stated that

> [m]andatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. *See, e.g., Graham*, 560 U.S. at ___, 130 S. Ct. at 2032 ("[T]he features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings"); *J.D.B. v. North Carolina*, 564 U.S. ___, ___, 131 S. Ct. 2394, 2400-2401 (2011) (discussing children's responses to interrogation). And finally, this

9

mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

____ U.S. at ___, 132 S.Ct. at 2467. The Court went on to state that while it did "not foreclose a sentencer's ability" to sentence a juvenile homicide offender to life without parole, but it did "require [the sentencer] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. at 2469 (footnote omitted).

The *Miller* Court pointed out that the decision in that case did not "categorically bar a penalty for a class of offenders or type of crime" as it did in *Graham* or *Roper*, but that it "mandate[d] only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty." ___ U.S. at ___, 132 S. Ct. at 2471. The Court further noted that the *Miller* decision "retains [the] distinction [between homicide and nonhomicide offenses]: *Graham* established one rule (a flat ban) for nonhomicide offenses, while [the Court] set out a different one (individualized sentencing) for homicide offenses" in *Miller*. ___ U.S. at ___, 132 S. Ct. at 2466 n.6.

Turner contends that the original sentencing court did not have the benefit of the recent scientific developments that influenced the *Graham* and *Miller* decisions and confirm that teenagers, through no fault of their own, have a lessened ability to regulate impulses and foresee future consequences. As such, he contends that the circuit court erred in giving any deference to the original sentencing court's imposition of the maximum sentence and in failing to engage in a resentencing process that fully took into account his age and the characteristics of youth.

We disagree with Turner's contention that the circuit court's resentencing did not comport with *Graham*. *Graham* does not mandate a resentencing procedure that takes into account a juvenile offender's age. Rather, *Graham* prohibits a court from sentencing a juvenile offender to life in prison without parole for a nonhomicide offense, and it provides that, while "[a] State need not guarantee the offender eventual release, . . . if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." 560 U.S. at 82. Once the circuit court imposed a nonlife sentence on Turner, its obligations under *Graham* were fulfilled.

Moreover, the circuit court's resentencing did not violate the requirements of *Miller*. *Miller* prohibits a sentencing scheme that *mandates* life in prison without the possibility of parole for juvenile homicide offenders. *Murry v. Hobbs*, 2013 Ark. 64, at 3 (per curiam). Turner was not subjected as a juvenile homicide offender to a mandatory life-without-parole sentence; therefore, *Miller* is inapplicable. *See Holland v. Hobbs*, No. 5:12CV00463-SWW-JJV, 2013 WL 6332731, at ⋆4 (E.D. Ark. Dec. 5, 2013) (concluding that *Miller* was inapplicable because the juvenile offender was not sentenced to life without parole by a mechanism that altogether precluded consideration of a lesser sentence for any reason, including youth).

Turner also argues that in the habeas proceeding, the circuit court had the authority to resentence him to less than the forty-year maximum sentence for kidnapping. In support of his argument, he cites two Florida cases in which courts have held that, when resentencing under *Graham*, they can sentence below the maximum allowed by statute even though the

defendant initially received a life-without-parole sentence. *See Frison v. State*, 76 So. 3d 1103, 1105 (Fla. Dist. Ct. App. 2011) (holding that a defendant who had been sentenced as a juvenile to life in prison for sexual battery with a deadly weapon could be sentenced under Florida law to "a term not exceeding forty years," so the resentencing court had the discretion to sentence the defendant to less than forty years); *Manuel v. State*, 48 So. 3d 94, 97–98 (Fla. Dist. Ct. App. 2010) (holding that a defendant who had been sentenced at the age of thirteen to two life sentences without parole for robbery with a firearm and attempted first-degree murder could be resentenced to any legal sentence available at the time of the commission of the offenses).

The State contends that, because *Graham* itself does not require Arkansas to adopt a particular remedy to comply with its mandate, it is of no moment that Florida appellate courts may have held that, upon resentencing offenders sentenced in contravention of *Graham*, trial courts have the authority under that state's postconviction rules to sentence those offenders to less than the statutory maximum.

The State further contends that because the habeas corpus proceedings in Arkansas provide a narrow remedy, the circuit court was allowed only to correct the illegal sentence and sentence Turner to the maximum. In support of its argument, the State cites *Flowers v. Norris*, 347 Ark. 760, 68 S.W.3d 289 (2002), and *Renshaw v. Norris*, 337 Ark. 494, 989 S.W.2d 515 (1999). In both of those cases, this court concluded that the habeas petitioners had been sentenced in excess of a statutory maximum. We then imposed or ordered imposed the maximum sentence otherwise allowed by law. *Flowers*, 347 Ark. at 767, 68 S.W.3d at 293



(modifying the petitioner's sentence for attempted capital murder from forty years to thirty years, which was the maximum sentence allowed by statute); *Renshaw*, 337 Ark. at 500–01, 989 S.W.2d at 518–19 (reversing and remanding to the trial court with instructions to correct the sentence for the Class B felony to the twenty-year maximum provided by statute).

Turner contends that *Flowers* and *Renshaw* are distinguishable from his case because the sentencing courts in those cases had simply inadvertently imposed a term in excess of the statutory maximum but nothing else underlying the original sentencing purpose was invalid. Here, Turner claims that, by contrast, the sentencing analysis is fundamentally different because the original sentencing court was under no obligation to take a defendant's youth into account and provide him with some realistic opportunity to obtain release. Therefore, Turner claims, the circuit court in this case could not, consistent with *Graham*, be restricted to simply reducing the sentence to the statutory maximum because the underlying purpose for imposing the maximum sentence is no longer constitutional. As the State points out, nothing in *Graham* requires this court to change the scope of the remedy available in this state's habeas corpus proceedings. A writ of habeas corpus is designed to correct detention for an illegal period of time. *E.g.*, *Williams v. Norris*, 2012 Ark. 30, at 3 (per curiam). But a habeas corpus proceeding does not afford a prisoner an opportunity to retry his case, and it is not a substitute for a direct appeal or postconviction relief. *Id*. at 3–4.

We agree with the State's contention that Turner's youth at the time of his offense and evidence concerning what brain science and psychology have to say about youthful offenders have already been taken into account through his categorical exemption from an

otherwise legislatively authorized life-without-parole sentence under *Graham*. We do not believe that *Graham* entitles Turner to additional consideration of his youth or the circumstances of his crime to reduce his sentence even further, particularly in this narrowly circumscribed habeas corpus proceeding. Accordingly, we need not consider Turner's argument that any sentence exceeding twenty-two years is disproportionate. The circuit court is affirmed on cross-appeal.

Affirmed on direct appeal; affirmed on cross-appeal.

*Dustin McDaniel*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

*Bryan A. Stevenson* and *Alicia A. D'Addario*, Equal Justice Initiative; and

*J. Blake Hendrix*, for appellee.