Cite as 2018 Ark. 382

# SUPREME COURT OF ARKANSAS

No. CV-18-144

|  |  |  |
|---|---|---|
| | | Opinion Delivered: December 20, 2018 |
| TERRANCE PROCTOR | | |
| | APPELLANT | APPEAL FROM THE LINCOLN COUNTY CIRCUIT COURT [NO. 40CV-17-79-5] |
| V. | | |
| WENDY KELLEY | | HONORABLE JODI RAINES DENNIS, |
| | APPELLEE | JUDGE |
| | | |
| | | AFFIRMED. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant, Terrance Proctor, who is currently serving a cumulative 240-year sentence, appeals the circuit court's denial of his petition for a writ of habeas corpus. For reversal, Proctor argues (1) that the circuit court's dismissal of his petition was clearly erroneous because it fails to address whether he has a "meaningful opportunity of release" pursuant to *Graham v. Florida*, 560 U.S. 48 (2010), and (2) that the circuit court erred by dismissing his petition due to the disproportionality of his sentence. We affirm.

## I. *Factual and Procedural Background*

Proctor committed a string of robberies in 1982 when he was seventeen years old. On January 13, 1983, Proctor pled guilty in the Pulaski County Circuit Court to ten counts of aggravated robbery and one count of robbery. Proctor was sentenced to life

imprisonment for one of the aggravated-robbery counts. For the remaining offenses, he was sentenced to a total of 200 years' imprisonment with the sentences to be served consecutively to his life sentence.

After the Supreme Court's ruling in *Graham*, which declared unconstitutional life-without-parole sentences for juveniles who did not commit a homicide offense, Proctor petitioned for a writ of habeas corpus in the Lincoln County Circuit Court and alleged that pursuant to the Supreme Court's decision in *Graham*, his sentence of life imprisonment for the nonhomicide offense of aggravated robbery was illegal. The circuit court granted the writ of habeas corpus. The circuit court concluded that, pursuant to our decision in *Hobbs v. Turner*, 2014 Ark. 19, 431 S.W.3d 283, the remedy for a *Graham* violation is to reduce the petitioner's life sentence to the maximum term-of-years sentence available for the crime at the time it was committed. The circuit court also determined that Proctor was not entitled to a resentencing proceeding in the circuit court in which he was convicted, and the court therefore reduced Proctor's life sentence to forty years. The court ordered the sentences to run consecutively. Therefore, Proctor was sentenced to a 240-year cumulative sentence, which he is now serving. We affirmed on appeal. *Proctor v. Hobbs*, 2015 Ark. 42.

Proctor filed another petition for a writ of habeas corpus in the Lincoln County Circuit Court on August 9, 2017. Proctor argued that the 240-year cumulative sentence he is now serving is a de facto life sentence in violation of the holding of *Graham*. Proctor also

argued that his sentence is grossly disproportionate to his crimes under an individualized Eighth Amendment analysis.[1] The circuit court denied his petition, and Proctor appealed.

## II. *Standard of Review*

A writ of habeas corpus is proper when a judgment of conviction is invalid on its face or when a trial court lacks jurisdiction over the cause. *Benson v. Kelley*, 2018 Ark. 333. Under our statute, a petitioner who does not allege his or her actual innocence must plead either the facial invalidity of the judgment or the lack of jurisdiction by the trial court and make a showing by affidavit or other evidence of probable cause to believe that the petitioner is being illegally detained. *Id.*; Ark. Code Ann. § 16-112-103(a)(1) (Repl. 2016). Unless the petitioner can show that the trial court lacked jurisdiction or that the judgment is facially invalid, there is no basis for a finding that a writ of habeas corpus should issue. *Williams v. Kelley*, 2017 Ark. 200, 521 S.W.3d 104.

A circuit court's decision on a petition for a writ of habeas corpus will be upheld unless it is clearly erroneous. *Johnson v. State*, 2018 Ark. 42, 538 S.W.3d 819. A decision is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.*

## III. *Analysis*

---

[1]Proctor does not argue that any of his sentences were individually illegal or outside the range provided for by the applicable statutes.

The United States Supreme Court has developed "two strands of precedent" reflecting its concern with unconstitutionally disproportionate punishments. *Miller v. Alabama*, 567 U.S. 460, 470 (2012). The first strand "has adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty." *Id.* at 470. Beginning in 2005, the Supreme Court decided a series of cases adopting categorical bans for certain sentences for juvenile offenders. First, the Court determined that the execution of individuals who were under the age of 18 when they committed a capital crime violates the Eighth Amendment to the United States Constitution. *Roper v. Simmons*, 543 U.S. 551 (2005). Next, in *Graham*, the Court concluded that the Constitution prohibits the imposition of a life-without-parole sentence on a juvenile offender who did not commit a homicide. Finally, in *Miller*, the Supreme Court held that the Eighth Amendment forbids a mandatory life-without-parole sentence for juveniles. The second strand of precedent involves a "case-specific gross disproportionality inquiry," *Graham*, 560 U.S. at 77, that evaluates "all the circumstances in a particular case." *Id.* at 59. Proctor argues that his sentence is unconstitutional under either analysis.

A. De Facto Life Sentence

Proctor first argues that the circuit court erred by failing to address whether he has a meaningful opportunity for release as required by *Graham*. According to Proctor, he will not be eligible for parole until he is 87 years old. Citing various statistical reports, Proctor

4

asserts that his life expectancy is less than 87 years. Therefore, he argues, his 240-year cumulative sentence is a de facto life-without-parole sentence and is illegal under *Graham*.

A brief discussion of the facts in *Graham* is necessary for an understanding of its application to this case. Graham pled guilty to committing armed burglary with assault or battery and attempted armed robbery. Graham committed the offenses in Florida when he was sixteen years old, but he was charged as an adult. The court withheld adjudication of guilt, and Graham received concurrent three-year terms of probation. Graham was required to serve twelve months in a county jail, which he had already served while awaiting trial. Less than six months after his release, Graham was arrested on suspicion of his involvement in a robbery and an attempted robbery. Graham's probation officer filed an affidavit with the trial court asserting that Graham had violated the terms of his probation by possessing a firearm, by committing crimes, and by associating with persons engaged in criminal activity. At a hearing, Graham admitted violating his probation by fleeing. The court found that Graham admitted violating his probation when he admitted attempting to avoid arrest, and further found that he had violated his probation by committing a home-invasion robbery, by possessing a firearm, and by associating with persons engaged in criminal activity. After a sentencing hearing, the trial court sentenced Graham to life in prison for the armed burglary and fifteen years for the attempted armed robbery. Parole was not available, and Graham's challenges to his sentence in the Florida courts were fruitless. The Supreme Court granted certiorari. In holding that Graham's life

sentence for a nonhomicide offense violated the Eighth Amendment, the Supreme Court wrote that

[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life.

*Graham*, 560 U.S. at 74.

Proctor invites this court to "lead the tide with other jurisdictions" and to extend *Graham* to prohibit sentences for juveniles when the cumulative time to serve before parole eligibility exceeds the individual's life expectancy. Because of the number of years he must serve before his parole-eligibility date, Proctor argues, he has no meaningful opportunity for release, despite his maturity and rehabilitation. In response, the State argues that *Graham* applies only to life-without-parole sentences imposed for nonhomicide offenses and that the holding in *Graham* should not be extended to include offenders who have been sentenced to a term of years.[2]

Proctor's sentence differs in significant ways from Graham's. First, Proctor was not sentenced to life without parole. Rather, Proctor received a cumulative sentence of 240 years, and the fact that he has a parole eligibility date is undisputed. Additionally,

---

[2]The State does not challenge Proctor's assertions that he has matured and been rehabilitated but argues that those issues are not relevant to Proctor's habeas proceeding, which is limited to a facial challenge to the judgment.

6

Proctor's 240-year sentence is the result of multiple sentences, any one of which would not amount to a life sentence or, presumably, even a de facto life sentence.[3]

Proctor argues that other jurisdictions have held that sentencing juvenile nonhomicide offenders to aggregate sentences that amount to a life sentence is a violation of the Eighth Amendment. We recognize that some courts in other jurisdictions have concluded that *Graham*'s reach extends to a lengthy aggregate term-of-years sentence for a juvenile offender. *See, e.g., State v. Moore*, 76 N.E.3d 1127 (Ohio 2016), *cert. denied*, 138 S. Ct. 62 (2017); *Johnson v. State*, 215 So. 3d 1237 (Fla. 2017). However, that is not a universal position. Other courts have held the opposite. *See, e.g., Lucero v. People*, 394 P.3d 1128, *cert. denied*, 138 S. Ct. 641 (Colo. 2018); *Vasquez v. Commonwealth*, 781 S.E.2d 920 (Va.), *cert. denied*, 137 S. Ct. 568 (2016).

*Graham* itself cautions that "[t[he instant case concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense." By its very terms, Graham applies only to sentences of life without parole. Further, *Graham*'s use of the singular "solely for a nonhomicide offense" underscores the fact that Graham was sentenced to life in prison for a single offense. Proctor was sentenced on eleven separate crimes. Moreover, we considered *Graham*'s application in our unanimous opinion, *Turner*,

_____

[3]Precisely how a court might determine what constitutes a de facto life sentence is not clear. Proctor suggests that an offender's race, gender, and health conditions that may have arisen after sentencing are appropriate considerations. Thus, under Proctor's analysis, the exact same term of years might be a de facto life sentence for one individual but not for another. Or, a sentence might not be a de facto life sentence at sentencing but, due to the individual's deteriorating health, could become one later.

*supra*. In *Turner*, a juvenile offender was sentenced to life imprisonment, and parole was not a possibility. After *Graham*, Turner was granted habeas relief, and the circuit court sentenced Turner to the maximum term of years available under the applicable statute. Turner appealed and argued that the circuit court erred in mechanically applying the maximum term of years instead of considering his youth at a resentencing hearing. In affirming the circuit court, we said that "[o]nce the circuit court imposed a nonlife sentence on Turner, its obligations under *Graham* were fulfilled." *Turner*, 2014 Ark. 19, at 11, 431 S.W.3d at 289. Here, Proctor has multiple sentences, but no individual sentence is a life sentence. Thus, *Graham* does not apply.

## B. Gross Disproportionality

Proctor also argues that his sentence violates the United States Constitution and the Arkansas Constitution because it is grossly disproportionate to the crimes he committed. In *Graham*, the Supreme Court discussed the Eighth Amendment and observed that it prohibits "inherently barbaric punishments." However, the court noted that the Eighth Amendment goes further than simply prohibiting barbaric punishments:

For the most part, however, the Court's precedents consider punishments challenged not as inherently barbaric but as disproportionate to the crime. The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." *Weems v. United States*, 217 U.S. 349, 367, 30 S. Ct. 544, 54 L. Ed. 793 (1910).

*Graham*, 560 U.S. at 59.

The State argues that this claim is not preserved for review because it was not ruled on by the circuit court, that the claim is not cognizable in a habeas petition, and that even if it were cognizable, Proctor failed to make a showing of gross disproportionality.

The circuit court identified and ruled on only one claim, which it described as Proctor's argument "that a sentence of 240 years is a de facto life sentence which constitutes cruel and unusual punishment entitling him to relief under the principles established in *Graham*." Although Proctor raised his gross-disproportionality argument before the circuit court, it is clear that he did not obtain a ruling on that issue. Proctor's failure to obtain a ruling precludes our review. *See, e.g.*, *Sylvester v. State*, 2017 Ark. 309, 530 S.W.3d 346.[4]

Affirmed.

HART, J., concurs.

**JOSEPHINE LINKER HART, Justice, concurring**. The majority's reasons for affirming the denial of Mr. Proctor's habeas petition follows our prior precedent, which is correct. I write separately, however, because while the majority's analysis accurately depicts the law as

---

[4]We note that Proctor referenced in his brief Act 539, the Fair Sentencing of Minors Act (FSMA), which provides for parole eligibility for persons who were minors at the time of committing an offense "that was committed before, on, or after March 20, 2017." Ark. Code Ann. § 16-93-621 (Supp. 2017). Therein, the Arkansas General Assembly determined that twenty years is an appropriate maximum length of time a juvenile must serve for a nonhomicide offense before becoming eligible for parole. Ark. Code Ann. § 16-93-621(a)(1). However, Proctor does not argue that the FSMA's parole provisions should apply retroactively to him, and as a result, we are precluded from addressing such.

9

it currently exists, I believe it is entirely too myopic. I fear that this case will once again put the State of Arkansas—and this court—on the wrong side of history.

The case before us is reminiscent of *Jackson v. Norris*, 2011 Ark. 49, 378 S.W.3d 103. In *Jackson*, this court declined to apply the Supreme Court's guidance embodied in *Roper v. Simmons*, 543 U.S. 551 (2005), and *Graham v. Florida*, 560 U.S. 48 (2010). *Jackson* became a companion case to the Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012).

In *Miller*, the Supreme Court stated that "the [Eighth] Amendment . . . prohibits a sentence of life without the possibility of parole for a child who committed a nonhomicide offense." 567 U.S. at 470. The *Miller* court further referred to the holding in *Graham* as a "flat ban on life without parole [for] nonhomicide crimes." 567 U.S. at 473. With the benefit of twenty-twenty hindsight, it is obvious to me that *Miller* represents the logical progression of the Supreme Court's Eighth Amendment jurisprudence.

In *Roper v. Simmons*, 543 U.S. 551 (2005), the case in which the death penalty for juvenile offenders was declared unconstitutional, the Supreme Court outlined the methodology for analyzing issues related to the Eighth Amendment.

The prohibition against "cruel and unusual punishments," like other expansive language in the Constitution, must be interpreted according to its text, by considering history, tradition, and precedent, and with due regard for its purpose and function in the constitutional design. To implement this frame work we have established the propriety and affirmed the necessity of referring to "the evolving standards of decency that mark the progress of a maturing society" to determine which punishments are so disproportionate as to be cruel and unusual.

543 U.S. at 560–61 (quoting *Trop v. Dulles*, 356 U.S. 86, 100–101 (1958)). It is noteworthy that *Roper* based its decision to proscribe the death penalty for juvenile offenders on three general differences between juveniles and adults which demonstrate "that juvenile offenders cannot with reliability be classified among the worst offenders." 543 U.S. at 569. These differences are (1) that lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults; (2) that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and (3) that the character of a juvenile is not as well formed as that of an adult. 543 U.S. at 569–570. I am mindful that Mr. Proctor committed several very serious crimes. Yet, the diminished moral responsibility associated with his youth is no less a factor in eleven counts than it is in a single count. Accordingly, in my view, the harshest penalty available for a juvenile offender—never being allowed to leave prison during his natural life.

Looking again to *Graham*, it is apparent that Mr. Proctor's 240-year sentence is constitutionally infirm because it can fairly be classified as "grossly disproportionate to the crime." 560 U.S. at 61. The *Graham* court noted that after *Roper*, the most serious penalty available for a juvenile offender was life in prison without the possibility of parole, and such a sentence violated the Eighth Amendment when applied to nonhomicide offenses. While it is true that Mr. Proctor committed several very serious crimes, none resulted in the death of a human being, and the worst physical injury in the record was the scrapes and bruises suffered by the victim of a purse snatching.

11

Furthermore, while acknowledging that the Eighth Amendment does not require the adoption of any specific penological theory, the *Graham* Court nonetheless considered the purpose and effect of a sanction to be relevant in a court's Eighth Amendment analysis, because a sentence lacking a "legitimate" penological purpose is by definition "disproportionate." 560 U.S. at 70. Retribution, deterrence, incapacitation, and rehabilitation, are the penological theories discussed in *Graham*. "Retribution" is acknowledged to be a legitimate reason to punish. *Id.* However, while society is entitled to impose a sanction that will restore the "moral imbalance caused by the offense," the sentence must be "directly related to the personal culpability of the offender." 560 U.S. at 70. The *Graham* Court rejected retribution as a legitimate reason for imposing a life sentence on a juvenile, nonhomicide offender because, unlike an adult, a juvenile has the previously noted diminished moral responsibility. 560 U.S. at 71–72. The *Graham* Court similarly rejected deterrence as a legitimate justification for a life sentence because a juvenile is less susceptible to deterrence given his lack of maturity and an underdeveloped sense of responsibility. 560 U.S. at 72. Incapacitation, was acknowledged as a legitimate reason for imprisonment, because the public's safety is jeopardized by recidivism. *Id.* However, the *Graham* Court stated that it is hard to justify a life sentence because it requires an "assumption that the juvenile offender forever will be a danger to society." *Id.* Finally, rehabilitation is not a sufficient justification because "[t]he penalty forswears altogether the rehabilitative ideal." 560 U.S. at 73.

In the case before us, the wisdom of the *Graham* Court's analysis is manifest. While Mr. Proctor was a prolific criminal, all of his offenses were committed during a narrow period of time when he was a teenager. Accordingly, retribution that extends for his entire natural life is, by definition, disproportionate to his nonhomicide offenses because of the diminished sense of moral responsibility that is positively correlated with his youth. I am mindful that, given his propensity for committing armed robberies, incapacitation was a legitimate societal interest. However, at some point, Mr. Proctor, or inmate, loses the impulsiveness of youth and no longer represents a virulent threat to society. At that point, it is impossible to justify spending over $20,000 a year to keep an inmate in prison. Deference is likewise not a legitimate reason for a de facto life sentence. At sentencing, the circuit judge stated that he intended to make an example out of Mr. Proctor. I note that the example went unheeded. In 1984, the prison population in Arkansas was 4,373. Jul. 1985–June 1986 Ark. Dep't of Corr. Ann. Rep. 76. By 2015, it had ballooned to 17,840. 2017-2027 Ark. Dep't of Corr. Sentencing Comm'n and Dep't of Cmty. Corr. *Ten-Year Adult Secure Population Projection* 12 (IFA Assocs. June 2017). While the general population of Arkansas increased by 25 per cent during this time, the number of prisoners increased by approximately 400 percent. Finally, the goal of rehabilitation is not served by a de facto life sentence because society will never benefit by a reformed man who never leaves prison.

The parole process is the proper vehicle for determining whether a convicted person is ready to reenter society. Justice requires us to do more than simply throw away the key.

I concur.

13

*Davenport Law, PLLC*, by: *Cara Boyd Connors*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.